**Electronically Filed
Intermediate Court of Appeals
30082
28-JUN-2012
10:42 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---oOo---

RICK RALSTON, Plaintiff-Appellant,
v.
ERROL Y. W. YIM, D.D.S., Defendant-Appellee.
and
JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10;
DOE CORPORATIONS 1-10; and DOE ENTITIES 1-10, Defendants.

NO. 30082

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 08-1-0934)

JUNE 28, 2012

NAKAMURA, C.J., FUJISE and GINOZA, JJ.

AMENDED OPINION OF THE COURT BY GINOZA, J.

Plaintiff-Appellant Rick Ralston (Ralston) appeals from the Final Judgment entered by the Circuit Court of the First Circuit (circuit court)[1] on October 9, 2009. In this case, Ralston asserts a claim for dental malpractice against Defendant-Appellee Errol Y.W. Yim, D.D.S. (Dr. Yim), from whom Ralston

---
[1] The Honorable Eden Elizabeth Hifo presided.

received orthodontic dental care. The circuit court granted summary judgment for Dr. Yim.

Plaintiff Ralston raises the following points of error on appeal: (1) the circuit court erred in shifting the burden of proof under the summary judgment standard to Ralston, the non-moving party, and thus erred in granting Dr. Yim's motion for summary judgment; (2) with respect to Dr. Yim's summary judgment motion, the circuit court erred in failing to find any triable issues in the submissions by the parties, including with regard to the issue of informed consent; and (3) the circuit court erred in granting costs to Dr. Yim because Dr. Yim should not have prevailed on his motion for summary judgment.

For the reasons set forth below, we hold that summary judgment was not proper and we therefore vacate the judgment in favor of Dr. Yim.

## I. Standard of Review

"An appellate court reviews an award of summary judgment *de novo* under the same standard applied by the circuit court." *Thomas v. Kidani*, 126 Hawai'i 125, 127-28, 267 P.3d 1230, 1232-33 (2011) (citations omitted). The standard for granting a motion for summary judgment is settled:

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Tri-S Corp. v. W. World Ins. Co.*, 110 Hawai'i 473, 487, 135 P.3d 82, 96 (2006) (citations and brackets omitted).

2

This court has further explained the burdens of the moving and non-moving parties on summary judgment as follows:

The burden is on the party moving for summary judgment (moving party) to show the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitles the moving party to judgment as a matter of law. This burden has two components.

First, the moving party has the burden of producing support for its claim that: (1) no genuine issue of material fact exists with respect to the essential elements of the claim or defense which the motion seeks to establish or which the motion questions; and (2) based on the undisputed facts, it is entitled to summary judgment as a matter of law. Only when the moving party satisfies its initial burden of production does the burden shift to the non-moving party to respond to the motion for summary judgment and demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial.

Second, the moving party bears the ultimate burden of persuasion. This burden always remains with the moving party and requires the moving party to convince the court that no genuine issue of material fact exists and that the moving part is entitled to summary judgment as a matter of law.

*Id.* at 488, 135 P.3d at 97.

## II. Circuit Court Proceedings

Ralston's complaint was filed on May 9, 2008, with an amended complaint filed on May 13, 2008.

On December 16, 2008, Ralston filed his pretrial statement, which stated that "[a] dental expert will be designated upon availability."

On April 1, 2009, a Trial Setting Status Conference Order was issued by the circuit court which set the trial date for September 27, 2010. In the order, deadlines for exchange of experts' reports was left blank. The deadline for discovery cut-off under Rule 12(r) of the Rules of the Circuit Court of the State of Hawaiʻi (RCCH) was set for July 27, 2010. The deadline for filing pretrial motions that request entry of judgment or

dismissal of any claim, pursuant to RCCH Rule 7(f), was set for August 6, 2010.

On April 22, 2009, less than a year after the lawsuit was initiated, Dr. Yim filed a Motion to Dismiss and/or For Summary Judgment. In addition to challenging the circuit court's jurisdiction,[2] Dr. Yim argued that Ralston could not prove his claim of dental malpractice because Ralston had not disclosed any experts.

In opposition to Dr. Yim's motion, Ralston argued that Dr. Yim had not met his initial burden of showing that no genuine issue of material fact existed that his orthodontic care comported with the accepted standard of care and that he had properly obtained Ralston's informed consent. Ralston also argued that discovery was ongoing, that the case was in the Court Annexed Arbitration Program (CAAP), and the CAAP deadline to exchange expert reports was not until May 22, 2009.

An initial hearing on the motion was held on May 13, 2009, during which the circuit court noted that by agreement of the parties and because expert reports were due under the CAAP deadline on May 22, 2009, Ralston was allowed to file supplemental briefing by May 27, 2009, Dr. Yim was allowed to file a supplemental reply brief by June 3, 2009, and a further hearing was scheduled for June 17, 2009.

On May 20, 2009, Ralston filed his supplemental memorandum in opposition to Dr. Yim's motion. Attached thereto was the declaration of his counsel, to which, in turn, was attached an expert report from Harry Aronowitz, D.M.D.

---

[2] Dr. Yim asserted that the circuit court did not have jurisdiction because Ralston's claim was not submitted for review to the Medical Claims Conciliation Panel (MCCP) under Hawaii Revised Statutes (HRS) § 671-1 (1993 Repl.) and § 671-12 (1993 Repl.). The circuit court denied Dr. Yim's motion in this regard and this ruling has not been appealed. From our *sua sponte* review, we determine that there is jurisdiction. *See Williams v. Aona*, 121 Hawaiʻi 1, 8, 210 P.3d 501, 508 (2009).

(Dr. Aronowitz) and Dr. Aronowitz's curriculum vitae.
Dr. Aronowitz's report stated in pertinent part:

> It is my opinion that attempting an ambitious course of treatment which included space closure following extraction on a high risk patient such as Mr. Ralston is beneath the standard of care. It is my opinion as well that treating this patient without the benefit of periapical radiographs is a departure from the standard.
>
> . . . .
>
> It is my opinion that Dr. Yim is responsible for the loss of Mr. Ralston's lower incisors. The combination of an aggressive treatment, on a high risk patient, with significant bone loss, taking a bone altering drug and using a challenging aligner was enough to cause the tooth loss.

On June 3, 2009, Dr. Yim filed his supplemental reply in support of his motion. Therein, Dr. Yim cited to this court's decision in *Eddins v. Morrison*, 105 Hawai'i 376, 98 P.3d 247 (App. 2004) and argued that Dr. Aronowitz's opinions were not contained in an affidavit or otherwise presented under oath or penalty of perjury, such that his opinions were inadmissible and summary judgment should be granted.

On June 16, 2009, the day prior to the continued hearing, Ralston filed a supplemental exhibit in support of his opposition to the motion. Attached to the declaration of Ralston's counsel was a copy[3] of an affidavit by Dr. Aronowitz, also signed June 16, 2009 before a notary public in California. The copy of Dr. Aronowitz's affidavit stated in pertinent part:

> 3. It is my opinion that attempting an ambitious course of treatment which included space closure following extraction on a high risk patient such as Mr. Ralston is beneath the standard of care.
>
> 4. It is my opinion as well that treating this patient without the benefit of periapical radiographs is a departure from the standard of care.
>
> 5. It is my opinion that Dr. Yim's treatment of Mr. Ralston was below the standard of care and this treatment resulted in the loss of Mr. Ralston's lower incisors.

---

[3] Dr. Aronowitz's affidavit appears to be a faxed copy.

5

A further hearing was held on June 17, 2009, at which the circuit court noted that it had given Ralston leeway, but that under *Eddins* an attorney cannot authenticate a doctor's opinions. On July 14, 2009, the circuit court entered its order which: struck Ralston's supplemental exhibit filed on June 16, 2009 because it violated RCCH Rule 7(b);[4] and granted Dr. Yim's motion for summary judgment "for lack of admissible expert evidence[.]"

## III. Discussion

### A. Summary Judgment

In this appeal, Ralston argues that the circuit court erred in granting summary judgment in favor of Dr. Yim because it improperly shifted the burden of proof to Ralston, the non-moving party. We recognize that the circuit court gave considered thought to the matter and allowed Ralston additional time to submit his expert's opinion, which Ralston failed to do in a manner proper under Rule 56 of the Hawai'i Rules of Civil Procedure (HRCP). However, because Dr. Yim did not present any evidence as the movant regarding the dental standard of care, and because plaintiff Ralston was not yet required to name his experts or provide their reports under the circuit court deadlines, we conclude that the summary judgment burden was improperly shifted to Ralston in this case. Further, it was reasonable under the circumstances that Ralston was not yet ready to identify experts in response to Dr. Yim's interrogatories and thus Dr. Yim could not simply point to Ralston's interrogatory responses to satisfy his burden as the summary judgment movant.

"It is well settled that in medical malpractice actions, the question of negligence must be decided by reference

_____

[4] Regarding motions, RCCH Rule 7(b) provides, *inter alia*, that "[n]o party may file any papers less than 3 days before the date set for the hearing unless otherwise ordered by the court."

to relevant medical standards of care for which <u>the plaintiff</u>
<u>carries the burden of proving through expert medical testimony</u>."
*Craft v. Peebles*, 78 Hawaiʻi 287, 298, 893 P.2d 138, 149 (1995)
(emphasis added) (citation omitted).  As further explained,
"[t]he standard of care to which a doctor has failed to adhere
must be established by expert testimony because a jury generally
lacks the requisite special knowledge, technical training, and
background to be able to determine the applicable standard
without the assistance of an expert."  *Id.*  (Citation and
internal quotation marks omitted).

As plaintiff, Ralston would thus ultimately be required
at trial to present expert testimony in order to establish the
standard of care that Dr. Yim allegedly failed to meet.  The
question in this appeal, however, is whether Ralston was required
to adduce such expert evidence in response to Dr. Yim's motion
for summary judgment when Dr. Yim did not present any evidence as
to the standard of care or that he met the standard of care.
Instead, Dr. Yim's summary judgment motion simply pointed to
Ralston's failure to disclose any experts in response to two
discovery requests.

In support of his motion for summary judgment, Dr. Yim
argued that:

> despite informal requests and interrogatories directed at
> such experts and the opinions to be offered against Dr. Yim,
> Plaintiff has disclosed neither the identity of any experts
> nor the substance of any opinions to be offered against Dr.
> Yim.  Consequently, Dr. Yim is entitled to summary judgment
> in his favor and against Plaintiff based on well-settled
> Hawaii law.

Ralston's answers to Dr. Yim's requests for answers to
interrogatories, which were attached to Dr. Yim's summary
judgment motion, did not disclose any experts at that time and
instead stated that an "[e]xpert report will be provided upon
availability" and that Ralston "will defer to the expert's

opinions."[5] Dr. Yim argued that summary judgment was proper because "absolutely no information is disclosed as to any expert or any substantive expert opinion." Dr. Yim also argued that because Ralston "has filed his pretrial statement of readiness and has proceeded to schedule a trial date, it is not premature to hold [Ralston] to his proof."[6]

Throughout the summary judgment proceedings, Ralston argued that Dr. Yim had not carried his burden as the movant seeking summary judgment. Although the circuit court had allowed Ralston additional time to submit his expert report, Ralston argued at the continued hearing that *Eddins* was distinguishable because, unlike this case, the defendant-movant in *Eddins* had initially presented affidavits by defense experts opining that there was no medical negligence.

The Hawai'i Supreme Court's rulings in *French v. Hawaii Pizza Hut, Inc.*, 105 Hawai'i 462, 99 P.3d 1046 (2004) and *Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours & Co.*, 116 Hawai'i 277, 172 P.3d 1021 (2007) are particularly instructive. We also agree with Ralston that this court's decision in *Eddins* is distinguishable. Finally, we conclude that the circumstances in this case are unlike the circumstances in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

### 1. **French v. Hawaii Pizza Hut, Inc.**

In *French*, the plaintiff brought discrimination claims against her employer, including a claim that she was

---

[5] Dr. Yim's first set of interrogatories was dated November 3, 2008 (approximately six months after the complaint was filed) and Ralston responded on December 8, 2008. Dr. Yim's second set of interrogatories was dated March 12, 2009 (approximately ten months after the complaint was filed) and Ralston responded on April 13, 2009.

[6] As noted above, Ralston's Pretrial Statement, filed on December 16, 2008, did not name any expert witnesses. Rather, it stated that "[a] dental expert will be designated upon availability."

discriminated against because of a disability, *i.e.* a medical limitation not to lift over twenty-five pounds. The defendant filed a summary judgment motion, arguing that the plaintiff did not meet her burden of establishing that she was disabled, as that term was defined by statute and administrative rules. 105 Hawaiʻi at 466, 470, 99 P.3d at 1050, 1054. Considering the respective burdens of proof between a summary judgment movant and the non-movant, the Hawaiʻi Supreme Court held that it was the defendant's burden, as movant, to produce admissible evidence showing plaintiff was not disabled. *Id.* at 470-71, 99 P.3d at 1054-55.

The *French* court further elaborated that, although the plaintiff may have the burden *at trial* to prove she suffered from a disability, for purposes of *summary judgment* the defendant had the burden to show the absence of any genuine issue of material fact on this issue. *Id.* at 471, 99 P.3d at 1055. In this part of its analysis, the *French* court distinguished *Celotex* and relied on *Anderson v. Radisson Hotel Corp.*, 834 F. Supp. 1364 (S.D. Ga. 1993), explaining:

> "[a]lthough *Celotex* stands for the proposition that under certain circumstances a summary judgment movant may carry its burden without presenting evidence *negating* an element of the other party's claim, *merely asserting that the non-moving party has not come forward with evidence* to support its claims is *not* enough." *Id.* (emphasis in original and emphasis added). As the court pointed out, "To repeat: the movant must first *demonstrate* that the non-moving party *cannot* carry its burden of proof *at trial*." *Id.* (emphasis in original and emphasis added) (citation omitted). "The distinction between not placing proof in the record and not being able to offer proof at trial is crucial." *Id.* As emphasized by Justice White in *Celotex*,
>
>> [a] plaintiff need not initiate any discovery or reveal his witness or evidence unless required to do so under the discovery Rules or by court order. Of course, he must respond if required to do so; but he need not also depose his witnesses or obtain their affidavits to defeat a summary judgment motion asserting only that he has failed to produce any support for his case.

> 477 U.S. at 328, 106 S.Ct. 2548 (White, J., concurring); *see also Anderson*, 834 F.Supp. at 1368.

*French*, 105 Hawai'i at 471-72, 99 P.3d at 1055-56 (underline emphasis added).[7]

In the instant case, the record reveals that when the summary judgment motion was filed on April 22, 2009 and when the circuit court issued its order granting summary judgment on July 14, 2009, Ralston was not yet required by any discovery rule or by any court order to disclose his expert witnesses or provide their reports or opinions to Dr. Yim. The record indicates that: the scheduled trial date was over a year away, on September 27, 2010; under RCCH Rule 12(r)[8] the discovery cut-off deadline was set for July 27, 2010; and, in turn, the deadline for final naming of witnesses was in May 2010.[9] Further, in Ralston's response to Dr. Yim's interrogatories, he did not state he would have no experts, but rather that he would provide an expert report upon availability. There is no contention by Dr. Yim that, given the applicable deadlines, Ralston would not have been able to ultimately offer proof at trial by presenting expert testimony on the standard of care.

Under the analysis in *French*, and given the procedural posture of the case when the summary judgment motion was considered and decided, Dr. Yim had the initial burden of

---

[7] The *French* court also noted that, unlike in *Celotex* where the defendant-movant had asked "the clinching question" in discovery and received a favorable answer, the defendant in *French* had made no similar showing and had not even argued that the plaintiff had no evidence to prove a disability. 105 Hawai'i at 472, 99 P.3d at 1056.

[8] RCCH Rule 12(r) states that "[d]iscovery shall be cut off 60 days before the assigned trial date."

[9] RCCH Rule 12(l) states, in relevant part, that "[s]ixty (60) days prior to the discovery cut off date plaintiff must name all theretofore unnamed witnesses."

presenting evidence showing that there was no genuine issue of material fact that he met the dental standard of care.

### 2. Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours & Co.

Subsequent to *French*, the Hawai'i Supreme Court decided *Exotics Hawaii-Kona*. There, the supreme court reviewed whether summary judgment for a defendant was proper where the defendant's motion was based on the plaintiffs' inability to prove damages. 116 Hawai'i at 286-87, 172 P.3d at 1030-31. Given the plaintiffs' claims for settlement fraud in that case, the supreme court held that expert-lawyer testimony was required on the element of damages. In turn, the supreme court held that the reports by plaintiffs' expert-lawyers, submitted in opposition to the defendant's summary judgment motion, were insufficient as a matter of law to establish damages and thus summary judgment was properly granted for the defendant.

The court in *Exotics Hawaii-Kona* discussed the parties' respective burdens of proof as follows:

> [a] summary judgment motion challenges the very existence or legal sufficiency of the claim or defense to which it is addressed. In effect, the moving party takes the position that he or she is entitled to prevail because his or her opponent has no valid claim for relief or defense to the action. Accordingly, *the moving party has the initial burden of identifying those portions of the record demonstrating the absence of a genuine issue of material fact. The moving party may discharge his or her burden by demonstrating that [,] if the case went to trial[,] there would be no competent evidence to support a judgment for his or her opponent. Cf. Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 ... (1986) (*a party moving for summary judgment* under Federal Rules of Civil Procedure Rule 56 *need not support his or her motion with affidavits or similar materials that negate his or her opponent's claims, but need only point out that there is [an] absence of evidence to support the opponent's claims*). For if no evidence could be mustered to sustain the nonmoving party's position, a trial would be useless.

When a motion for summary judgment is made and supported,

> an adverse party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or as otherwise provided in HRCP Rule 56, must set forth *specific facts showing that there is a genuine issue for trial.* If he or she does not so respond, summary judgment, if appropriate, shall be entered against him or her.

HRCP Rule 56(e) (1998) (emphasis added). In other words, *a party opposing a motion for summary judgment cannot discharge his or her burden by alleging conclusions, nor is he or she entitled to a trial on the basis of a hope that he can produce some evidence at that time.* On motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party.

*Young v. Planning Comm'n of the County of Kauaʻi*, 89 Hawaiʻi 400, 407, 974 P.2d 40, 47 (1999) (internal quotation marks, citation, and original brackets omitted) (emphases added). Moreover, "[t]he evidentiary standard required of a moving party in meeting its burden on a summary judgment motion depends on whether the moving party will have the burden of proof on the issue at trial." *Ocwen Fed. Bank, FSB v. Russell*, 99 Hawaiʻi 173, 182, 53 P.3d 312, 321 (App. 2002) (citation omitted). Where the moving party is the defendant, who does *not* bear the ultimate burden of proof at trial, *summary judgment is proper when the non-moving party-plaintiff*

> *fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.* In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is entitled to judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Hall v. State*, 7 Haw. App. 274, 284, 756 P.2d 1048, 1055 (1988) (emphasis added) (internal quotation marks and citations omitted).

*Id.* at 301-02, 172 P.3d at 1045-46 (underline emphasis added).

Importantly, it was clear in *Exotics Hawaii-Kona* that when the circuit court had granted summary judgment, the *deadlines for the plaintiffs to submit their final expert reports had passed* and that the experts would not be allowed to testify at trial on matters beyond their reports. *Id.* at 287, 302-03,

172 P.3d at 1031, 1046-47. In its analysis, the supreme court quoted for a second time a portion of the circuit court's ruling, which stated:

> [The p]laintiffs have not submitted the expert testimony required to sustain their burden of proof on the proper measure of damages in their cases. The deadlines for [the p]laintiffs to submit their final expert reports and amend their pleadings were October 15, 2004, and December 14, 2004, respectively. This court previously made clear that expert reports were to be final and that the experts would not be allowed to testify on matters beyond their respective reports in its Order Related to Trial Procedures, filed May 6, 2004. [The p]laintiffs are therefore unable to prove the fact or amount of settlement fraud damages as a matter of law, and summary judgment is granted on all remaining claims herein.

*Id.* at 302-03, 172 P.3d at 1046-47. The circumstances in *Exotics Hawaii-Kona* are thus an example of plaintiffs "not being able to offer proof at trial[.]" *French*, 105 Hawaiʻi at 472, 99 P.3d at 1056.

Although Dr. Yim relies on *Exotics Hawaii-Kona*, we conclude that the circumstances in this case are distinguishable. Even though the CAAP deadlines may have called for the parties to exchange their expert reports, CAAP is a separate albeit dual track with regard to the circuit court proceedings, and moreover, CAAP has the specific purpose "to provide a simplified procedure for obtaining a prompt and equitable resolution of certain civil matters[.]" Hawaiʻi Arbitration Rules (HAR) Rule 2(A); *see also* HAR Rule 7. "Arbitration hearings are intended to be informal, expeditious and consistent with the purposes and intent of these rules." HAR Rule 2(C). Moreover, pursuant to HAR Rule 14, only certain discovery is specifically allowed in CAAP proceedings and otherwise discovery is at the discretion of the arbitrator. HAR Rule 14(A) and (B).

The only relevant reference to experts in the arbitration rules requires that, in their respective prehearing statements, the parties provide information and copies of reports

for experts they intend to call as a witness or to use *at the arbitration hearing*. HAR Rule 16(A)(3). Moreover, HAR Rule 7 addresses the relationship of CAAP proceedings to the circuit court's jurisdiction and rules, and expressly maintains the circuit court's jurisdiction and authority as follows:

> (A) <u>Cases filed in</u>, or removed to, <u>the Circuit Court shall remain under the jurisdiction of that court for all phases of the proceedings</u>, including arbitration.
>
> (B) <u>Except for</u> the authority to act or interpret these rules expressly given to the arbitrator, the Arbitration Administrator, the Judicial Arbitration Commission, or the Arbitration Judge, <u>all issues shall be determined by the Circuit Court with jurisdiction</u>.
>
> (C) Before a case is submitted or ordered to the Program, and after a Notice of Appeal and Request for Trial De Novo is filed, all applicable rules of the Circuit Court and of civil procedure apply. After a case is submitted or ordered to the Program, and before a Notice of Appeal and Request for Trial De Novo is filed, or until the case is removed from the Program, these rules apply.
>
> . . .
>
> (E) Circuit Court Rule 12(q), and <u>all rules of court or of civil procedure requiring the filing of pleadings, remain in effect notwithstanding the fact that a case is under the Program</u>.
>
> (F) <u>All dispositive motions shall be made to the Circuit Court as required by law or rule notwithstanding the fact that a case is under the Program</u>.

HAR Rule 7 (emphasis added). Given HAR Rule 7, and consistent with the distinct purpose of CAAP and its limitations on discovery, an expert report deadline in a CAAP proceeding does not, of its own accord, alter the deadlines for disclosing experts and/or producing expert reports in the circuit court proceedings. In short, expert deadlines set in the CAAP proceeding do not, in the related circuit court proceeding, supersede expert deadlines as ordered by the circuit court or as determined pursuant to court rules.

In the circuit court's Trial Setting Status Conference Order, filed on April 1, 2009, the deadline for exchange of expert reports was left blank. Moreover, under the circuit court

14

rules, the deadline for Ralston to name his witnesses, including expert witnesses, was still far into the future in May 2010.

Therefore, unlike in *Exotics Hawaii-Kona*, it is not possible to conclude that plaintiff Ralston would be unable to carry his burden of proof at trial on the standard of care with expert testimony. At the time summary judgment was granted, Ralston still had time to name his expert witnesses.

### 3. Eddins v. Morrison

As noted above, we agree with Ralston that *Eddins* is distinguishable from the case at bar. In *Eddins*, this court concluded that summary judgment was proper against a plaintiff in a medical malpractice case because the plaintiff failed to adduce admissible expert evidence on the standard of care. 105 Hawai'i at 376-77, 98 P.3d at 247-48. Importantly, however, the defendant doctor in *Eddins* had met his initial burden as the summary judgment movant by submitting his experts' affidavits on the standard of care.

> The affidavits attached to the [defendant's] MSJ, of Torrey Goodman, M.D., and Maurice W. Nicholson, M.D., to the effect that [defendant's] treatment and handling of Eddins were reasonable and appropriate and met the applicable standard of care, had "the effect of ... refuting one of the essential elements of [Eddins' causes] of action" and thus established *prima facie* that there was "no genuine issue as to any material fact and that [Dr. Morrison was] entitled to judgment as a matter of law." *Id.* (citations, internal quotations marks and block quote formats omitted). *See also* HRCP Rule 56(c).

> Thereupon, it was incumbent upon Eddins to "come forward, through affidavit or other evidence, with specific facts showing that there is a genuine issue of material fact." And Eddins had to do so via expert medical testimony, "as would be admissible in evidence[.]" Eddins failed to do so.

*Id.* at 377, 98 P.3d at 248 (underline emphasis added) (internal footnote, citations and parentheticals omitted). Hence, summary judgment was affirmed in *Eddins* due to the plaintiff's failure to submit admissible evidence to *rebut* the defendant doctor's evidence that he had met the medical standard of care. *Id.*

15

The instant case differs from *Eddins* because Dr. Yim, as the movant, did not submit any evidence on the standard of care.

### 4. Celotex Corp. v. Catrett

Finally, we conclude that this case is unlike *Celotex*. In *Celotex*, the plaintiff claimed that her husband's death had been the result of exposure to asbestos products manufactured or distributed by various corporations, including the defendant. 477 U.S. at 319. The defendant moved for summary judgment asserting that the plaintiff failed to produce evidence of causation because in response to specific interrogatories, the plaintiff failed to identify any witness who could testify about her husband's exposure to the defendant's asbestos products. *Id.* at 319-20.

The United States Supreme Court reviewed whether summary judgment had been properly granted to the defendant, and particularly whether the defendant had met its initial burden as the summary judgment movant without providing evidence *negating* that the decedent had been exposed to its products. The court explained, *inter alia*, that:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Id.* at 322 (emphasis added). The U.S. Supreme Court, in effect, held that the defendant had met its initial burden as summary judgment movant. However, in that case, summary judgment had been granted almost two years after the lawsuit had been initiated and, moreover, the court specifically determined that "no serious claim can be made that respondent was in any sense 'railroaded' by a premature motion for summary judgment." *Id.* at 326.

In this case, when summary judgment was granted, the case had only been pending for a little over a year and the case was also assigned to CAAP, which provides a simplified procedure and limited discovery. Under these circumstances, and because preliminary discovery is often required before experts can be considered or identified,[10] we cannot conclude that Ralston had adequate time to conduct the necessary discovery and then to consider and disclose his experts in response to Dr. Yim's interrogatories, which were served six and ten months after the complaint was filed. Hence, unlike in *Celotex*, Dr. Yim could not satisfy his initial burden as the summary judgment movant by simply pointing to Ralston's responses to the interrogatories.

### 5. **Summary Judgment was not proper**

Considering the analysis and rulings in *French*, *Exotics-Hawaii Kona*, and *Eddins*, we conclude that it was not proper in this case to shift the burden to Ralston as the non-moving party to submit admissible evidence on the applicable dental standard of care, because Dr. Yim did not submit any evidence on the standard of care and the deadline for Ralston to disclose his experts had not yet expired.

Moreover, unlike the determination in *Celotex*, we conclude that Ralston did not have adequate time to conduct discovery and to consider and identify his experts in responding to Dr. Yim's interrogatories. In this situation, for summary judgment purposes, defendant-movant Dr. Yim could not shift the burden to plaintiff non-movant Ralston by simply pointing to Ralston's responses to the interrogatories.[11]

---

[10] The record indicates that, before Ralston's expert could prepare his opinion related to the CAAP arbitration, Ralston's counsel deposed two treating physicians and provided the transcripts to the expert for his review.

[11] We do not reach the question of whether summary judgment may be appropriate in a situation where the deadline for disclosing experts has not

(continued...)

17

Therefore, we conclude that it was error to grant summary judgment in favor of Dr. Yim.

Given our ruling above, we need not reach Ralston's other point of error related to the circuit court's summary judgment ruling.

### B.   Taxable Costs

Ralston argues that the circuit court erred in granting costs to Dr. Yim because he should not have prevailed on his motion for summary judgment.  Dr. Yim requested taxation of costs pursuant to HRCP Rule 54(d)(1),[12] and given the costs allowed under HRS § 607-9 (1993 Repl.).[13]  The circuit court awarded Dr. Yim $3,878.36 in taxable costs.

Because we hold that Dr. Yim's motion for summary judgment was improperly granted, Dr. Yim is not the "prevailing party" entitled to costs.  *See* HRCP Rule 54(d)(1).  Accordingly, we vacate the award of costs to Dr. Yim.

---

[11]   (...continued)
yet expired, but the non-movant plaintiff has had adequate time to conduct discovery and to identify experts.

[12]   HRCP Rule 54(d)(1) states that "[e]xcept when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs[.]" (Emphasis added).

[13]   HRS § 607-9 states:
>   §607-9 Cost charges exclusive; disbursements.  No other costs of court shall be charged in any court in addition to those prescribed in this chapter in any suit, action, or other proceeding, except as otherwise provided by law.
>   All actual disbursements, including but not limited to, intrastate travel expenses for witnesses and counsel, expenses for deposition transcript originals and copies, and other incidental expenses, including copying costs, intrastate long distance telephone charges, and postage, sworn to by an attorney or a party, and deemed reasonable by the court, may be allowed in taxation of costs.  In determining whether and what costs should be taxed, the court may consider the equities of the situation.

## IV. Conclusion

For the reasons stated above, we vacate the Final Judgment entered on October 9, 2009 and we remand this case to the circuit court for further proceedings consistent with this opinion.


On the briefs:

Sue V. Hansen
Charles W. Crumpton
(Crumpton & Hansen)
for Plaintiff-Appellant

John Reyes-Burke
Steven E. Tom
(Burke McPheeters Bordner & Estes)
for Defendant-Appellee