292 P.3d 1276

**Rick RALSTON, Respondent/Plaintiff–Appellant,**

v.

**Errol Y.W. YIM, D.D.S., Petitioner/Defendant–Appellee.**

**No. SCWC–30082.**

Supreme Court of Hawai'i.

Jan. 25, 2013.

John Reyes–Burke, for petitioner.

Sue V. Hansen, for respondent.

RECKTENWALD, C.J., NAKAYAMA, ACOBA, and McKENNA, JJ., and Circuit Judge AHN, in Place of POLLACK, J., Recused.

Opinion of the Court by
RECKTENWALD, C.J.

This appeal requires us to consider the evidentiary burden that must be satisfied before summary judgment can be granted. Plaintiff Rick Ralston sued his dentist, Dr. Errol Y.W. Yim, claiming that Dr. Yim had negligently provided him with orthodontic care to correct overcrowding in his lower front teeth.

Dr. Yim moved for summary judgment. At the first hearing on the motion, the circuit court sua sponte ordered a continuance pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 56(f) to allow Ralston to submit an expert's affidavit establishing that Dr. Yim failed to meet the applicable standard of care. Prior to the next hearing, Ralston's counsel submitted an unauthenticated report by Dr. Harry Aronowitz, which stated that Dr. Yim did not meet the standard of care. Dr. Yim filed his reply and asserted that because Ralston had failed to provide an expert affidavit, as required under HRCP Rule 56, summary judgment should be granted.

On the day before the continued hearing, Ralston's counsel submitted a faxed copy of an affidavit from Dr. Aronowitz. At the continued hearing, Dr. Yim argued that the affidavit should be stricken because it was untimely, and further asserted that it was inadmissible because it was a faxed copy and not an original. The circuit court agreed with Dr. Yim, and stated that it had already given Ralston an opportunity to continue the proceeding so that he could obtain a proper affidavit. The circuit court struck Ralston's faxed affidavit, denied Ralston's further request for a HRCP Rule 56(f) continuance,

and granted summary judgment in favor of Dr. Yim.[1]

Ralston appealed, arguing, inter alia, that the circuit court erred in granting summary judgment in favor of Dr. Yim because it shifted the burden of proof to Ralston by requiring that he submit an expert affidavit, even though Dr. Yim had not come forward with evidence that he had met the standard of care. The Intermediate Court of Appeals determined that Dr. Yim failed to satisfy his initial burden as the summary judgment movant. *Ralston v. Yim*, 128 Hawai'i 42, 45–51, 282 P.3d 584, 587–93 (App.2012). The ICA also noted that Ralston did not have "adequate time" to conduct discovery, and that Ralston's case was accordingly distinguishable from the leading federal case of *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (noting that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). *Ralston*, 128 Hawai'i at 50–51, 282 P.3d at 592–93. Thus, the ICA vacated the circuit court's final judgment and remanded the case for further proceedings. *Id.* at 52, 282 P.3d at 594.

In his application, Dr. Yim raises the following question:

> Was it grave error for the ICA to excuse [Ralston's] failure to move for a [HRCP] Rule 56(f)[2] continuance and failure to authenticate exhibits containing expert opinions, by requiring Dr. Yim, in a summary judgment motion, to come forward with affirmative evidence establishing the standard of care and prove he did not violate said standard?

We hold that the ICA did not err in vacating the circuit court's judgment. As this court has previously articulated, a summary judgment movant may satisfy his or her initial burden of production by either (1) producing admissible evidence to show there was no genuine issue of material fact, or (2) showing that the non-moving party cannot carry his or her burden of proof at trial. *French v. Hawaii Pizza Hut, Inc.*, 105 Hawai'i 462, 470–72, 99 P.3d 1046, 1054–56 (2004). However, as the ICA pointed out, the movant generally cannot support its initial burden of production by pointing solely to the non-moving party's lack of evidence if discovery has not concluded.

However, the ICA's discussion of the United States Supreme Court's decision in *Celotex* could be read to suggest that summary judgment may be appropriate prior to a discovery deadline if the non-movant has had "adequate time to conduct discovery and to identify experts." *Ralston*, 128 Hawai'i at 51 n. 11, 282 P.3d at 593 n. 11. Such a rule would be inconsistent with this court's case law and the rules governing summary judgment. First, granting summary judgment on the ground that the non-movant cannot presently satisfy his or her burden of proof would be inconsistent with *French*, which requires a showing that the nonmovant *cannot* carry his or her burden of proof at trial. Second, the procedure for obtaining a continuance set forth in HRCP Rule 56(f) is the means by which a non-moving party can assure that he or she has had "adequate time" to conduct discovery before the motion is decided. The ICA's suggestion that "adequate time" is a substantive requirement for the granting of a motion for summary judgment could cause confusion as to the rights and obligations of the parties under HRCP Rule 56(f). Thus, we conclude that HRCP Rule 56(f) is the proper procedure to request and obtain additional time to respond to a motion for summary judgment that is filed prior to the discovery deadline.

---

1. The Honorable Eden Elizabeth Hifo presided.

2. HRCP Rule 56 governs summary judgment. HRCP Rule 56(f) (2009) provides:
   **When affidavits are unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Nevertheless, we conclude that the circuit court erred in granting summary judgment since Dr. Yim did not satisfy his initial burden of production. Therefore, the judgment of the ICA is affirmed.

## I. Background

The following factual background is taken from the record on appeal.

### A. Circuit Court Proceedings

On May 9, 2008, Ralston filed a civil complaint against Dr. Yim in the circuit court. He subsequently filed a First Amended Complaint on May 13, 2008, and asserted:

. . . .

6. On or about November 15, 2005, sixty-four year old [ ] Ralston sought orthodontic dental care with [Dr.] Yim, DDS to reduce crowding in [Ralston's] lower front teeth.

7. [Dr.] Yim's treatment plan included extracting [Ralston's] lower lateral tooth (front tooth # 23) and using Invisalign aligners to move the three remaining lower front teeth (front teeth # 24, 25, 26) to close the gap. As a result of [Dr.] Yim's negligent dental treatment, [Ralston] lost the remaining three front teeth.

8. At no time did [Dr.] Yim advised [sic] [Ralston] of the risk that [Ralston] could lose his three lower front teeth.

9. [Dr.] Yim failed to advise [Ralston] of other treatment alternatives and their respective risks and advantages in order to enable [Ralston] an informed decision. [sic]

10. As a result of [Dr.] Yim's aforementioned negligence, including dental treatment that fell below the standard of care and failure to obtain [Ralston's] informed consent, [Ralston] has suffered

irreparable injury and harm from the loss of his four natural front teeth.

11. The negligence of [Dr.] Yim was and is a legal cause and/or substantial factor in causing [Ralston's] injuries and damages.

. . . .

Dr. Yim filed his answer denying the allegations against him and asserting multiple defenses.

On December 16, 2008, Ralston filed a pretrial statement, which stated, "[a] dental expert will be designated upon availability."

On April 1, 2009, the circuit court issued a Trial Setting Status Conference Order, which set trial for September 27, 2010. The Order set the deadline for completion of discovery as July 27, 2010, pursuant to Rules of the Circuit Court of the State of Hawai'i (RCCH) Rule 12(r).[3] The deadline for the exchange of experts' reports was left blank in the Order. The deadline for filing pretrial motions requesting entry of judgment or dismissal of any claim was set for August 6, 2010, pursuant to RCCH Rule 7(f).[4]

#### 1. Motion for Summary Judgment

On April 22, 2009, Dr. Yim filed a Motion to Dismiss[5] and/or Motion for Summary Judgment (motion for summary judgment). In his memorandum in support of the motion, Dr. Yim argued:

Hawaii law is clear that in this dental malpractice action, [Ralston] bears the burden of proof and moreover must prove any alleged breach of the standards of dental care through competent expert testimony. Moreover, [Ralston] must establish the materiality of any allegedly non-disclosed risk of treatment through competent expert testimony to establish the re-

---

3. RCCH Rule 12(r) (2005) provides, "Discovery shall be cut off 60 days before the assigned trial date."

4. RCCH Rule 7(f) (2005) provides, "Unless otherwise ordered for good cause shown, all pretrial motions that request entry of judgment or dismissal of any claim shall be filed not later than 50 days prior to the assigned trial date."

5. Dr. Yim asserted that the lawsuit should be dismissed because the circuit court lacked subject matter jurisdiction over the claim. Dr. Yim argued that he was a "health care provider" within the meaning of HRS § 671–1, and as such, Ralston was required to initially submit the claim against him to the Medical Claims Conciliation Panel, pursuant to HRS § 671–12. Ralston expressly abandons this theory on appeal.

quired elements of an informed consent claim.

Here, despite informal requests and interrogatories directed at such experts and the opinions to be offered against Dr. Yim, [Ralston] has disclosed neither the identity of any experts nor the substance of any opinions to be offered against Dr. Yim. Consequently, Dr. Yim is entitled to summary judgment in his favor and against [Ralston] based on well-settled Hawaii law.

Attached are [Ralston's] responses to Dr. Yim's two sets of interrogatories, in which absolutely no information is disclosed as to any expert or substantive expert opinion. . . .

Dr. Yim respectfully submits that as [Ralston] has filed his pretrial statement of readiness and has proceeded to schedule a trial date, it is not premature to hold [Ralston] to his proof. Given the absence of admissible expert testimony to prove any alleged breach of the standard of care, or to prove the materiality of any allegedly undisclosed risk of treatment, Dr. Yim submits he is entitled to summary judgment in his favor.

Dr. Yim attached copies of Ralston's answers to his interrogatories. Attached as exhibit A was Ralston's December 8, 2008 response to Dr. Yim's November 3, 2008 First Interrogatories to Plaintiff, which asked for each person whom Ralston expected to call as an expert witness at trial and the substance of their testimony. In relevant part, Ralston responded that an "[e]xpert report will be provided upon availability[.]" Attached as exhibit B was Ralston's April 13, 2009 answers to Dr. Yim's March 12, 2009 Second Interrogatories to Plaintiff. In response to Dr. Yim's interrogatory regarding any evidence, including expert opinion testimony, that Ralston may rely on to prove the materiality of risks or complications associated with the Invisalign treatment, Ralston stated, "I will defer to the expert's opinion."

Ralston filed a memorandum in opposition to Dr. Yim's motion for summary judgment. Ralston argued that,

[d]iscovery is ongoing and the [Court Annexed Arbitration Program (CAAP) ] deadline for the parties to exchange expert reports is not until May 22, 2009 and [Ralston] will comply with this deadline. *[Dr. Yim] has not met his burden of showing that no genuine issue of material facts [sic] exists whether [Dr. Yim's] orthodontic care was below the accepted standard of care and/or that [Ralston's] informed consent was duly obtained.*

(Emphasis added).

Dr. Yim filed a reply, and again argued that, although the case was pending for a year, Ralston failed to proffer any admissible evidence that Dr. Yim violated the standard of care, and accordingly, failed to establish a genuine issue of material fact.

The circuit court held a hearing on Dr. Yim's motion on May 13, 2009, and addressed the issue of Ralston's lack of an expert's report. The following discussion occurred:

[Court]: But may I ask you this, [Ralston's counsel]: Isn't it true that you said that you—the time hasn't yet come for you to name an expert?

[Counsel for Ralston]: Yes, Your Honor. The deadline for the CAAP exchange of reports is May 22nd. And we had this discussion previously. I explained to [Dr. Yim's counsel] that we're going to comply with that deadline. And we didn't want to have to do two reports. Because he's taking depositions of all the treating dentists; and I wanted to have those transcripts to submit to our expert so he can formulate his final opinions and I didn't want to do two reports, to save money, and he understood that. You know, we ask that the [c]ourt give deference to the CAAP arbitration deadlines.

[Court]: Well, actually, I'm not going to . . . because I think they're two separate tracks and it would not be appropriate for me to do that. But I'm converting what you're saying into a [HRCP] Rule 56(f) request for a continuance until those deadlines have passed and until you get your expert—or proposed expert, one or more, to review those transcripts.

. . . .

[Counsel for Dr. Yim]: [I]n fact, the expert report disclosure deadline was set by the

CAAP arbitrator with the explicit statement by her that it was—she was anticipating the potential that would be the evidence presented at the hearing. We would submit that there are interrogatories, discovery outstanding, long since, that have not been answered. We're not asking for a report. We put Plaintiffs to their proof on a motion for summary judgment. I would also submit that a [HRCP] Rule 56(f) request in this circumstance is arguably inappropriate given that, in fact, she is talking about an expert witness that she—over who which [sic] she has control and who could have submitted a declaration or an affidavit or otherwise made some sort of showing on this motion....

[Court]: Okay. But now I'd like to respond to that as follows: The fact that Interrogatories, expert Interrogatories—which are common practice, which is fine that you propounded—haven't been answered, as to that you can bring a motion to compel. But beyond that, as to the idea that the time has passed for naming an expert, I have had a different case, it was a medical malpractice, where the plaintiffs therein had not provided any expert opinion; the Motion for Summary Judgment was brought; the time for such an expert opinion had passed; and knowing that, the plaintiffs' attorney did not put in an expert opinion on the motion for summary judgment, which they could have done to defeat the motion, but responded only that they were going to ask for a request to extend the deadline for final naming, which they hadn't done, so I granted the motion. But in this case, not only has the date not passed, and not only has there not been a motion to compel the answers to interrogatories, but Plaintiff has said they're going to get that, and they want to use the transcripts of the treating physicians to present to the doctor that they're going to use. So under those circumstances, I think I would be very remiss to grant a summary judgment because they don't yet have that opinion.

....

(Discussion off the record.)

Back on the record. By agreement of counsel, inasmuch as the expert report that Plaintiffs are compelled to provide under the CAAP arbitration discovery deadline is due, I take it to be hand-delivered to [Dr. Yim's counsel] on May 22nd. Is that right?

[Counsel for Ralston]: Yes.

[Court]: Then, by agreement, any supplemental to this motion, which we're treating as summary judgment for lack of an expert report, is due May 27, 2009. And [Dr. Yim's counsel] may either file a ... supplemental reply on June 3rd if he finds that he didn't get that report or that it doesn't meet the requirements of [HRCP] Rule 56, or should he so desire, withdraw that part of this motion because he did receive the report. And in any event, we'll have a supplemental hearing on that part of the [HRCP] Rule 56 motion[.]

The circuit court continued the hearing on the motion for summary judgment until June 17, 2009.

On May 20, 2009, Ralston filed a supplemental memorandum in opposition to Dr. Yim's motion for summary judgment. Attached to his supplemental memorandum was the declaration of his counsel, stating that attached thereto as exhibits were "true and correct copies" of an expert's report and the expert's curriculum vitae. Attached as exhibit A was a report submitted by Dr. Harry I. Aronowitz (Dr. Aronowitz report), in which Dr. Aronowitz concluded that Dr. Yim's treatment was beneath the standard of care and caused the loss of Ralston's lower incisors.

Dr. Yim filed his supplemental reply in support of his motion for summary judgment on June 3, 2009. Citing *Eddins v. Morrison,* 105 Hawai'i 376, 378, 98 P.3d 247, 249 (App. 2004),[6] Dr. Yim argued that Dr. Aronowitz's report was inadmissible hearsay because it was "not contained in affidavits or otherwise

---

6. In *Eddins,* the ICA determined, "Because Eddins did not present his rebutting medical testimony by affidavit, or otherwise as would be admissible in evidence, Eddins failed to carry his burden, and Dr. Morrison was entitled to summary judgment as a matter of law." *Id.* (citations omitted).

made under oath or penalty of perjury[.]" Accordingly, Dr. Yim asserted that the circuit court should grant summary judgment in his favor on all claims. Alternatively, Dr. Yim contended that "Dr. Aronowitz's report would put in issue only those alleged breaches of the standard of care as to which Dr. Aronowitz has opined." Dr. Yim asserted that Ralston failed to articulate "any viable theory of alleged negligent failure to obtain informed consent to treatment, and similarly failed to establish by expert evidence the materiality of any alleged undisclosed risk (which came to pass)." Accordingly, Dr. Yim argued that the circuit court should grant summary judgment in his favor on counts relating to informed consent, and limit the issues in dispute to those matters contained in Dr. Aronowitz's report.

On June 16, 2009, Ralston filed a supplemental exhibit in support of his memorandum in opposition to Dr. Yim's motion. Appended to Ralston's supplemental exhibit in support of his memorandum in opposition was a declaration of Ralston's counsel. Ralston's counsel stated that attached to her declaration, as Exhibit C, was a "true and correct copy of the Affidavit of Harry Aronowitz, DMD, dated June 16, 2009." Exhibit C was a facsimile copy of an affidavit by Dr. Aronowitz, signed and dated June 16, 2009 before a notary public, in which Dr. Aronowitz stated, "Dr. Yim's treatment of Mr. Ralston was below the standard of care and this treatment resulted in the loss of Mr. Ralston's lower incisors."

At the continued hearing on June 17, 2009, Dr. Yim orally moved for the court to strike Dr. Aronowitz's affidavit because Ralston's submission violated RCCH Rule 7(b),[7] inasmuch as it was filed less than three days before the hearing. Dr. Yim also noted that the affidavit was still inadmissible because it was a facsimile copy authenticated by Ralston's counsel. Ralston argued that he presented evidence of a medical opinion and that the circuit court should overlook the "technicality" that the affidavit was faxed and give him "leniency in terms of accepting that supplemental [exhibit.]" Dr. Yim asserted that

Ralston was on notice from June 3, 2009, when Dr. Yim submitted his supplemental reply, that Dr. Aronowitz's report was inadmissible. The circuit court stated:

> ... I agree with [Dr. Yim's counsel] that the court did bend over backwards by construing the representations about not having an opinion because [Ralston's counsel] thought that the CAAP track would trump, more or less, the regular requirements of the rules of civil procedure when faced with a motion for summary judgment. And now she knows it doesn't, and I'm sure that will be a lesson well-learned.
>
> But be that as it may, it's also true that when we got the supplemental ... [*Eddins*] makes it clear that an attorney cannot be the one, by declaration or otherwise, to authenticate the doctor's opinion. That under [HRCP] Rule 56 there needed to be at least a declaration of the doctor authenticating that those opinions contained in his report are his. And that's what was attempted to be cured with the lately filed supplemental.
>
> In any event, I don't think I'm at liberty to bend over backwards again and, therefore, the motion to strike on the basis made is granted, therefore, the motion for summary judgment is granted.

Ralston then stated, "Your Honor, may I ask for one last—[,]" to which the circuit court responded, "56F request for continuance is denied."

On July 14, 2009, the circuit court entered an order denying Dr. Yim's motion to dismiss, granting Dr. Yim's oral motion to strike Dr. Aronowitz's faxed affidavit pursuant to RCCH Rule 7(b), and granting Dr. Yim's motion for summary judgment.

### 2. Motion for Reconsideration

Ralston subsequently filed a motion for reconsideration of the circuit court's order granting Dr. Yim's motion for summary judgment. Ralston argued, inter alia, that the circuit court's order granting summary judgment was inconsistent with this court's decision in *French* because Dr. Yim, as the

---

7. RCCH Rule 7(b) provides in relevant part: "No party may file any papers less than 3 days before

the date set for the hearing unless otherwise ordered by the court."

movant, had the initial burden of producing admissible evidence that there was no genuine issue of material fact. Ralston argued that, under *French*, "general allegations by [Dr. Yim] that no genuine issue of material fact existed [are] not sufficient" to meet the movant's burden. Ralston pointed out that Dr. Yim "did not offer any defense expert opinion and did not include any admissible evidence negating any element of [Ralston's] claims or that [Dr. Yim's] dental treatment of [Ralston] did not fall below the standard of care." Ralston also argued that granting summary judgment would result in a "discovery windfall and significant litigation advantage" to defendants inasmuch as a defendant could file for summary judgment at the beginning of every case because they have "nothing to lose and everything to gain[.]" In addition, Ralston contended that there was no prejudice to Dr. Yim in this case because he was given notice of Dr. Aronowitz's report prior to the hearing. Attached to Ralston's motion for reconsideration was the original, signed affidavit of Dr. Aronowitz, dated June 16, 2009.

Dr. Yim filed an opposition to Ralston's motion. Dr. Yim argued that Ralston "attempts to relitigate old matters and makes arguments previously raised (or which certainly could and should have been made) during the earlier proceedings." Dr. Yim further argued that Ralston "already had 'two bites of the apple,' and [Ralston] failed to take the opportunity—afforded to him sua sponte by the [c]ourt, as [Ralston] himself admits—to timely and substantively oppose Dr. Yim's motion." In addition, Dr. Yim

asserted that Ralston's reliance on *French* was misplaced because *French* "did not involve a legal duty for which breach must be proven only through expert evidence[.]"

Ralston filed a reply, in which he asserted that under HRCP Rule 60(b),[8] the circuit court should exercise its discretion to grant relief to Ralston.

On August 19, 2009, the circuit court filed its order denying Ralston's motion for reconsideration.

### 3. Motion to Tax Costs

On September 4, 2009, Dr. Yim filed a motion to tax costs against Ralston in the amount of $6,742.22, arguing that he was entitled to costs as the prevailing party, pursuant to HRCP Rule 54(d)(1)[9] and HRS § 607-9.[10] On September 21, 2009, Ralston filed a memorandum in opposition to Dr. Yim's motion to tax costs and argued that the motion should be denied or alternatively limited to amounts reasonable under the circumstances. On October 9, 2009, the circuit court filed its order granting in part and denying in part Dr. Yim's motion to tax costs, and awarding costs in the amount of $3,878.36.

On October 9, 2009, the circuit court also entered its Final Judgment in favor of Dr. Yim and against Ralston on all claims.

### B. ICA Appeal

On appeal, Ralston raised three points of error:

> No other costs of court shall be charged in any court in addition to those prescribed in this chapter in any suit, action, or other proceeding, except as otherwise provided by law.
> All actual disbursements, including but not limited to, intrastate travel expenses for witnesses and counsel, expenses for deposition transcript originals and copies, and other incidental expenses, including copying costs, intrastate long distance telephone charges, and postage, sworn to by an attorney or a party, and deemed reasonable by the court, may be allowed in taxation of costs. In determining whether and what costs should be taxed, the court may consider the equities of the situation.

---

8. HRCP Rule 60(b) provides courts with discretion to grant relief from judgments or orders in specific circumstances.

9. HRCP Rule 54(d)(1) provides:
Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the State or a county, or an officer or agency of the State or a county, shall be imposed only to the extent permitted by law. Costs may be taxed by the clerk on 48 hours' notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court.

10. HRS § 607-9 provides:

1. By finding that [Ralston] did not have admissible expert evidence and granting [Dr. Yim's motion for summary judgment], the trial court erred in shifting the burden of proof to the non-moving party, [Ralston], without requiring that [Dr. Yim], as the movant, first satisfy his burden of proof under the summary judgment standard, namely, that there was no breach of the standard of care or that no genuine issue of material fact exists with respect to the essential elements of [Ralston's] claims.

2. The trial court erred when it failed to find any triable issues in the submissions by the parties, including with respect to the issue of informed consent.

3. The trial court erred when it granted costs to [Dr. Yim] because [Dr. Yim] should not have prevailed in his motion for summary judgment.

Ralston argued that Dr. Yim bore the initial burden of proof under the summary judgment standard.[11] Under this standard, Ralston argued, Dr. Yim was required to (1) "show[ ] through affidavit, deposition, or other evidentiary materials, that there is no genuine issue of material fact[,]" or (2) show that Ralston would be unable "to carry his burden at trial." Ralston asserted that Dr. Yim (1) failed to submit admissible evidence that Dr. Yim's dental treatment met the standard of care, and (2) provided only "general allegations" that Ralston could not carry his burden at trial. Accordingly, Ralston argued, summary judgment was not appropriate. Ralston also argued that allowing Dr. Yim to prevail under these circumstances would encourage defendants to "file for summary judgment early in every case, even before sufficient discovery could be done[.]"

In addition, Ralston argued that the circuit court erred in failing to find any triable issues in the submissions of the parties. Spe-cifically, Ralston argued that the circuit court should not have disregarded Dr. Aronowitz's report "based entirely upon a technicality as to the form and timing of the submission," because the substance of the report rebutted Dr. Yim's argument that Ralston would be unable to prevail at trial. Ralston also argued that summary judgment was inappropriate on the issue of informed consent based on Ralston's answers to Dr. Yim's interrogatories, in which Ralston stated that he was "not properly informed" of the risk of the treatment. Finally, Ralston argued that the circuit court erred in granting Dr. Yim costs as the prevailing party because Dr. Yim should not have prevailed on the motion for summary judgment.

In his answering brief, Dr. Yim argued that Ralston had the burden of proving the malpractice claim with admissible expert evidence, and that Ralston's failure to submit any admissible evidence within the briefing schedule set by the circuit court appropriately resulted in the circuit court granting summary judgment. Dr. Yim then asserted that Ralston waived his argument that the circuit court abused its discretion in striking Dr. Aronowitz's affidavit under HCCR Rule 7(a) because Ralston had not raised it as a point of error. In addition, Dr. Yim argued that Ralston "misapprehend[ed] the procedure and relative burdens of production, persuasion and proof in connection with Dr. Yim's motion for summary judgment." Dr. Yim specifically asserted that he did not have an obligation to submit affidavits in support of his motion for summary judgment when he could "demonstrate the absence [of] an issue of material fact 'by showing that if the case went to trial, there would be no evidence to support the non-movant's position.'" Dr. Yim asserted that he had satisfied his burden by showing that Ralston lacked the requisite expert evidence. Dr. Yim further contended that the present case was analogous to the United States Supreme Court's decision in *Celotex*,[12] and consistent with this court's

---

11. Although Ralston asserts that Dr. Yim failed to meet his burden of *proof*, the substance of his argument appears to be that Dr. Yim did not meet his burden of *production*.

12. *Celotex* is discussed in detail *infra*. The portion of *Celotex* cited by Dr. Yim states:

> [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.... [R]egardless of whether the moving party accompanies its summary judgment motion with affidavits,

holding in *French.* Dr. Yim concluded that he had met his initial burden of production by "detailing the absence of any admissible evidence to raise a triable issue as to dental negligence."

Ralston filed a reply brief and argued that, as the movant, Dr. Yim was required to first submit admissible evidence to show the existence of a genuine issue of material fact before the burden could be shifted to Ralston. Ralston also contended, "Although [his] counsel has made technical missteps with respect to the filing of [his] expert report, there is no deliberate violation and no prejudice to [Dr. Yim] who received all the requested information in a timely manner." In addition, Ralston asserted that he did not waive his right to argue that the circuit court abused its discretion in denying his HRCP Rule 56(f) continuance because "appellate review necessarily includes review of the trial court's treatment of [his] supplemental exhibit or expert affidavit[.]"

In its published opinion, the ICA determined that Dr. Yim "did not present any evidence as the movant regarding the dental standard of care, and because plaintiff Ralston was not yet required to name his experts or provide their reports under the circuit court deadlines," concluded that the circuit court improperly shifted the summary judgment burden to Ralston. *Ralston,* 128 Hawai'i at 45, 282 P.3d at 587. The ICA stated, "it was reasonable under the circumstances that Ralston was not yet ready to identify experts in response to Dr. Yim's interrogatories and thus Dr. Yim could not simply point to Ralston's interrogatory responses to satisfy his burden as the summary judgment movant." *Id.* The ICA cited *French* and *Exotics Hawaii–Kona, Inc. v. E.I. Du Pont De Nemours & Company,* 116 Hawai'i 277, 172 P.3d 1021 (2007), in support of this proposition. *Id.* at 46–50, 282 P.3d at 588–92. In addition, the ICA distinguished *Eddins* because, in *Eddins,* the movant-doctor had satisfied his initial

burden by putting forth affirmative evidence showing that he had met the standard of care. *Id.* at 50, 282 P.3d at 592.

The ICA also distinguished *Celotex. Id.* at 50–51, 282 P.3d at 592–93. The ICA concluded that, unlike the non-movant in *Celotex,* "Ralston did not have adequate time to conduct discovery and to consider and identify his experts in responding to Dr. Yim's interrogatories." *Id.* at 51, 282 P.3d at 593. In a footnote, the ICA noted, "[w]e do not reach the question of whether summary judgment may be appropriate in a situation where the deadline for disclosing experts has not yet expired, but the non-movant plaintiff has had *adequate time* to conduct discovery and to identify experts." [13] *Id.* at 51 n. 11, 282 P.3d at 593 n. 11 (emphasis added).

Thus, the ICA determined that the circuit court erred in granting summary judgment in favor of Dr. Yim. *Id.* at 51, 282 P.3d at 593. The ICA also reversed the circuit court's award of taxable costs in favor of Dr. Yim because he was not the "prevailing party" pursuant to HRCP Rule 54(d)(1). *Id.* Accordingly, the ICA vacated and remanded the circuit court's final judgment. *Id.* at 52, 282 P.3d at 594.

The ICA filed its judgment on appeal and Dr. Yim timely filed an application for writ of certiorari.

## II. Standard of Review

▪ "On appeal, the grant or denial of summary judgment is reviewed de novo." *First Ins. Co. of Hawai'i v. A & B Props., Inc.,* 126 Hawai'i 406, 413, 271 P.3d 1165, 1172 (2012) (citing *Nuuanu Valley Ass'n v. City & Cnty. of Honolulu,* 119 Hawai'i 90, 96, 194 P.3d 531, 537 (2008)). Furthermore,

[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is

---

the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied.

*Id.* at 323, 106 S.Ct. 2548.

13. The ICA did not address whether the circuit court abused its discretion in striking Dr. Aronowitz's affidavit.

material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Id.* at 413–14, 271 P.3d at 1172–73 (citation omitted).

## III. Discussion

The central issue is whether Dr. Yim, as the movant in a motion for summary judgment, satisfied his initial burden of production. Ralston and the ICA, relying on this court's decision in *French,* contend that Dr. Yim had the initial burden of production to put forth admissible evidence that he did not breach the standard of care.[14] *Ralston,* 128 Hawai'i at 46, 282 P.3d at 588. Dr. Yim, citing *Celotex,* argues that the ICA erred in requiring him to present evidence that he did not breach the standard of care, since he had the option of "pointing to [Ralston's] lack of evidence[.]" As explained below, the movant in a motion for summary judgment cannot satisfy his or her initial burden of production simply by pointing to the nonmovant's lack of evidence prior to the discovery deadline, and thus, Dr. Yim did not satisfy his initial burden of production.

### A. Principles applicable to summary judgment motions

Under HRCP Rule 56(b), a party "may move with or without supporting affidavits for a summary judgment in the party's favor[.]" "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." HRCP Rule 56(c). Moreover,

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

HRCP Rule 56(e).

This court has set forth a burden shifting paradigm for situations where the non-movant bears the burden of proof at trial:

The burden is on the party moving for summary judgment (moving party) to show the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitles the moving party to judgment as a matter of law. This burden has two components.

First, the moving party has the burden of producing support for its claim that: (1) no genuine issue of material fact exists with respect to the essential elements of the claim or defense which the motion seeks to establish or which the motion questions; and (2) based on the undisputed facts, it is entitled to summary judgment as a matter of law. Only when the moving party satisfies its initial burden of production does the burden shift to the nonmoving party to respond to the motion for summary judgment and demonstrate spe-

---

**14.** In *Craft v. Peebles,* this court held,

It is well settled that in medical malpractice actions, the question of negligence must be decided by reference to relevant medical standards of care for which the plaintiff carries the burden of proving through *expert medical testimony.* The standard of care to which a doctor has failed to adhere must be established by

expert testimony because a jury generally lacks the requisite special knowledge, technical training, and background to be able to determine the applicable standard without the assistance of an expert.

78 Hawai'i 287, 298, 893 P.2d 138, 149 (1995) (citations and quotation marks omitted) (emphasis added).

cific facts, as opposed to general allegations, that present a genuine issue worthy of trial.

Second, the moving party bears the ultimate burden of persuasion. This burden always remains with the moving party and requires the moving party to convince the court that no genuine issue of material fact exists and that the moving party is entitled to summary judgment as a matter of law. *French*, 105 Hawai'i at 470, 99 P.3d at 1054 (citation and emphasis omitted).

■ Thus, where the non-movant bears the burden of proof at trial, a movant may demonstrate that there is no genuine issue of material fact by either: (1) presenting evidence negating an element of the non-movant's claim, or (2) demonstrating that the non-movant will be unable to carry his or her burden of proof at trial. *See id.* at 472, 99 P.3d at 1056. In determining whether a movant has demonstrated that the non-movant cannot carry his or her burden of proof at trial, this court applies principles derived from the United States Supreme Court's holding in *Celotex*. Accordingly, a review of *Celotex* is instructive.

■ *Celotex* concerned a motion for summary judgment brought pursuant to Federal Rules of Civil Procedure (FRCP) Rule 56.[15] 477 U.S. at 319, 106 S.Ct. 2548. There, the plaintiff, Myrtle Nell Catrett, claimed that the defendant's asbestos products caused her husband's death. *Id.* The defendant filed a motion for summary judgment arguing that Catrett, as the non-moving party, failed to meet her burden of showing that the defendant caused her husband's death because in her response to defendant's interrogatories, she failed to identify any witness that could testify about her husband's exposure to defendant's asbestos. *Id.* at 319–20, 106 S.Ct. 2548. The federal district court granted the defendant's motion for summary judgment almost two years after the lawsuit had been initiated. *Id.* at 320, 106 S.Ct. 2548. On appeal, the Court of Appeals for the District of Columbia Circuit reversed the trial court

and determined that the defendant's motion for summary judgment was "fatally defective" because it did not include any evidence to prove it was not liable. *Id.* at 321, 106 S.Ct. 2548. The United States Supreme Court granted certiorari and determined that FRCP Rule 56 did not require the defendant-movant to support its motion for summary judgment with affirmative evidence to rebut Catrett's claim. *Id.* at 322, 106 S.Ct. 2548. Instead, the Court held that the moving party's burden could also be discharged by "pointing out to the district[ ] court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548.

The Court also noted that FRCP Rule 56(c) mandates the entry of summary judgment, only "after adequate time for discovery[.]" *Id.* at 322, 106 S.Ct. 2548. The Court determined that "no serious claim can be made that [Catrett] was in any sense 'railroaded' by a premature motion for summary judgment." *Id.* at 326, 106 S.Ct. 2548. Thus, the Court reversed the Court of Appeals and remanded the case for further proceedings with regard to whether Catrett had submitted adequate evidence in opposition to the motion for summary judgment. *Id.* at 328, 106 S.Ct. 2548. Justice White, who provided the fifth vote for the majority opinion, stated in a concurring opinion:

> I agree that the Court of Appeals was wrong in holding that the moving defendant must always support his motion with evidence or affidavits showing the absence of a genuine dispute about a material fact. I also agree that the movant may rely on depositions, answers to interrogatories, and the like, to demonstrate that the plaintiff has no evidence to prove his case and hence that there can be no factual dispute. But the movant must discharge the burden the Rules place upon him: *It is not enough to move for summary judgment without supporting the motion in any way or with*

---

**15.** The version of FRCP Rule 56 in effect at the time of *Celotex* is in relevant aspects substantively identical to HRCP Rule 56. This court can look to cases interpreting the Federal Rules of Civil Procedure for persuasive guidance. *See Thomas v. Kidani*, 126 Hawai'i 125, 130 n. 5, 267 P.3d 1230, 1235 n. 5 (2011).

*a conclusory assertion that the plaintiff has no evidence to prove his case.*

*A plaintiff need not initiate any discovery or reveal his witnesses or evidence unless required to do so under the discovery Rules or by court order. Of course, he must respond if required to do so; but he need not also depose his witnesses or obtain their affidavits to defeat a summary judgment motion asserting only that he has failed to produce any support for his case.* It is the defendant's task to negate, if he can, the claimed basis for the suit.

Petitioner Celotex does not dispute that if respondent has named a witness to support her claim, summary judgment should not be granted without Celotex somehow showing that the named witness' possible testimony raises no genuine issue of material fact. It asserts, however, that respondent has failed on request to produce any basis for her case.

Respondent, on the other hand, does not contend that she was not obligated to reveal her witnesses and evidence but insists that she has revealed enough to defeat the motion for summary judgment. Because the Court of Appeals found it unnecessary to address this aspect of the case, I agree that the case should be remanded for further proceedings.

477 U.S. at 328–29, 106 S.Ct. 2548 (White, J., concurring) (citation omitted) (emphasis added).

In general, *Celotex* has been interpreted in the federal courts as standing for the proposition that:

> under certain circumstances the movant may meet its Rule 56 burden without negating an element of the nonmoving party's claim and that under such circumstances it is sufficient to point to materials on file that demonstrate that the party bearing the burden of proof at trial *will not be able to meet that burden.*

*Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 607–08 (11th Cir.1991) (emphasis added) (noting that *Celotex* presented the "unusual situation" wherein "neither party could prove either the affirmative or the negative of an essential element of the claim"); *see also Anderson v. Radisson Hotel Corp.,* 834 F.Supp. 1364, 1368 (S.D.Ga.1993); *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1438 n. 19 (11th Cir.1991) (holding that the movant "must point to specific portions of the record in order to demonstrate that the nonmoving party cannot meet its burden of proof at trial"); *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.,* 210 F.3d 1099, 1105 (9th Cir.2000) (determining that a movant must have "made reasonable efforts, using the normal tools of discovery, to discover whether the nonmoving party has enough evidence to carry its burden of persuasion at trial").

In addition, some federal courts, relying on Justice White's concurring opinion in *Celotex,* have emphasized that *Celotex* does not permit a defendant to prevail by "merely asserting that the non-moving party *has not* come forward with evidence to support its claim[.]" *Anderson,* 834 F.Supp. at 1368 (emphasis added). Rather, the defendant must demonstrate that the plaintiff "*cannot* carry its burden of proof at trial." *Id.* (emphasis added).

This court adopted a similar view of *Celotex* in *French* and *Exotics Hawaii–Kona.* In *French,* the plaintiff, Bobbie L. French, filed an employment discrimination claim against her employer, Hawai'i Pizza Hut, asserting that she was discriminated against because of her disability. *French,* 105 Hawai'i at 465–66, 99 P.3d at 1049–50. French's claimed disability was a medical limitation to not lift over twenty-five pounds. *Id.* Pizza Hut filed a motion for summary judgment and argued that French was not disabled as a matter of law. *Id.* at 466, 472–73, 99 P.3d at 1050, 1056–57. The circuit court granted summary judgment in favor of Pizza Hut because, inter alia, French's impairment did not constitute a disability as a matter of law. *Id.* at 466, 99 P.3d at 1050. French appealed, and this court concluded that the circuit court erred in granting summary judgment on this basis because the question of whether French's limitation constituted a disability must be resolved on a case-by-case basis. *Id.* at 470, 99 P.3d at 1054.

This court then addressed Pizza Hut's alternative argument, that summary judgment was appropriate because French failed to provide the court with admissible evidence that the average person could lift more than

25 pounds, and thus failed to establish she was disabled in a major life activity. *Id.* Noting that Pizza Hut, as the movant, had the initial burden of demonstrating the absence of a genuine issue of material fact, this court concluded that it was Pizza Hut's burden *"to produce admissible evidence* that the average person in the general population cannot lift more than twenty-five pounds." *Id.* at 470–71, 99 P.3d at 1054–55 (emphasis added). Because Pizza Hut failed to produce such admissible evidence, this court concluded that Pizza Hut had not satisfied its initial burden. *Id.* at 473, 99 P.3d at 1057.

However, the dissenting opinion, relying on *Celotex,* concluded that Pizza Hut had met its initial burden. *Id.* at 481, 99 P.3d at 1065 (Nakayama, J., dissenting). In response, the majority distinguished *Celotex* from the case before it, and explained:

> [T]he defendant in *Anderson*[, 834 F.Supp. at 1368,] relied on *Celotex,* and asserted that it had met its burden by pointing out an absence of evidence on the record to support at least one essential element of the plaintiffs' claim.
>
> However, the *Anderson* court explained that, "[a]lthough *Celotex* stands for the proposition that under certain circumstances a summary judgment movant may carry its burden without presenting evidence negating an element of the other party's claim, merely asserting that the non-moving party has not come forward with evidence to support its claims is not enough." As the court pointed out, *"To repeat: the movant must first demonstrate that the non-moving party cannot carry its burden of proof at trial." "The distinction between not placing proof in the record and not being able to offer proof at trial is crucial."* As emphasized by Justice White in *Celotex,*
>
> > [a] plaintiff need not initiate any discovery or reveal his witness or evidence unless required to do so under the discovery Rules or by court order. Of course, he must respond if required to do so; but he need not also depose his witnesses or obtain their affidavits to defeat a summary judgment motion asserting only that he has failed to produce any support for his case.
>
> As pointed out by the *Anderson* court, the movant in *Celotex* had taken the affirmative step, in its interrogatories, of asking the clinching question in discovery, and had received a favorable answer, and pointed out the plaintiff's implicit admission to the Court. Accordingly, the movant made a "show[ing of] the absence of any genuine issues as to all material facts." In the present case, however, Pizza Hut has made no such showing, and did not even argue that Appellant had no evidence to prove whether her lifting restriction was a "substantial limitation" of a "major life activity," as compared to the average person.

*French,* 105 Hawai'i at 471–72, 99 P.3d at 1055–56 (emphasis added) (citations and footnote omitted).

Subsequently, in *Exotics Hawaii–Kona,* the movant-defendant-DuPont sought summary judgment on the ground the plaintiffs could not prove damages for their claim. 116 Hawai'i at 286, 172 P.3d at 1030. Specifically, DuPont asserted that the deadline for the submission of final expert reports had passed and the reports of plaintiffs' experts were insufficient to prove damages. *Id.* Accordingly, DuPont argued that the plaintiffs could not sustain their burden of proof with regard to damages at trial. *Id.* The circuit court awarded summary judgment in favor of DuPont. *Id.* at 283–84, 172 P.3d at 1027–28. This court upheld summary judgment in favor of DuPont on the ground that plaintiffs "could not, as a matter of law, prove damages[.]" *Id.* at 283, 172 P.3d at 1027. This court explained:

> [T]he moving party has the initial burden of identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *The moving party may discharge his or her burden by demonstrating that[,] if the case went to trial[,] there would be no competent evidence to support a judgment for his or her opponent. Cf. Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 ... (1986) (a party moving for summary judgment under Federal Rules of Civil Proce-

dure Rule 56 need not support his or her motion with affidavits or similar materials that negate his or her opponent's claims, but need only point out that there is [an] absence of evidence to support the opponent's claims). For if no evidence could be mustered to sustain the nonmoving party's position, a trial would be useless.

. . . .

Moreover, "[t]he evidentiary standard required of a moving party in meeting its burden on a summary judgment motion depends on whether the moving party will have the burden of proof on the issue at trial." Where the moving party is the defendant, who does not bear the ultimate burden of proof at trial, summary judgment is proper when the non-moving party-plaintiff

> *fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.* In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is entitled to judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Id.* at 301–02, 172 P.3d at 1045–46 (emphasis added) (some brackets in original and some citations omitted).

Applying these principles to DuPont's motion, this court noted that "plaintiffs proffered reports of their economic expert and attorney experts[,]" but that these reports "were insufficient as a matter of law to establish plaintiffs' damages." *Id.* at 302, 305–06, 172 P.3d at 1046, 1049–50. Accordingly, this court upheld the circuit court's grant of summary judgment in favor of DuPont. *Id.* at 305–06, 172 P.3d at 1049–50. Significantly, in *Exotics Hawaii–Kona* the deadline for the submission of additional expert reports had passed. *Id.* at 302–03, 172 P.3d at 1046–47.

Recently, this court addressed a somewhat similar issue in *Thomas.* In *Thomas,* the plaintiff, Tara Thomas, filed a legal malpractice suit against her former attorney, Grant K. Kidani. 126 Hawai'i at 126, 267 P.3d at 1231. Kidani filed a motion for summary judgment arguing that Thomas was unable to show an element of her legal malpractice claim, i.e., that she would have prevailed at trial. *Id.* at 127, 267 P.3d at 1232. In his motion for summary judgment, Kidani pointed to the trial of the underlying case and noted that he had raised the argument that Thomas asserted should have been argued, and that the court in the underlying case rejected the argument. *Id.* This court did not explicitly address whether Kidani had satisfied his initial burden of production, however, this court stated, "[s]ummary judgment for Kidani is proper if Kidani shows that Thomas cannot meet her burden of proof." *Id.* at 130, 267 P.3d at 1235. After noting that the causation element of a legal malpractice claim requires a plaintiff to litigate a "trial within a trial," this court analyzed Thomas's citation to several cases and Thomas's expert's declaration to determine if she demonstrated she could satisfy her burden of proof at trial. *Id.* at 130–33, 267 P.3d at 1235–38. This court determined that Thomas could not satisfy her burden of proof at trial. *Id.* at 133, 267 P.3d at 1238. Therefore, *Thomas* is another example of summary judgment being granted against a non-moving party who did not merely fail to place "proof in the record," but who also would be unable to "offer proof at trial[.]" *French,* 105 Hawai'i at 472, 99 P.3d at 1056 (citation omitted).

In sum, this court's case law indicates that a summary judgment movant may satisfy his or her initial burden of production by either (1) presenting evidence negating an element of the non-movant's claim, or (2) demonstrating that the nonmovant will be unable to carry his or her burden of proof at trial. *See French,* 105 Hawai'i at 470–72, 99 P.3d at 1054–56; *Exotics Hawaii–Kona,* 116 Hawai'i at 302, 172 P.3d at 1046. Where the movant attempts to meet his or her burden through the latter means, he or she must show not only that the non-movant has not placed proof in the record, but also that the

movant will be *unable to offer proof at trial.* See *French,* 105 Hawai'i at 472, 99 P.3d at 1056 (citing *Anderson,* 834 F.Supp. at 1368). Accordingly, in general, a summary judgment movant cannot merely point to the non-moving party's lack of evidence to support its initial burden of production if discovery has not concluded. See *id.* ("[M]erely asserting that the non-moving party has not come forward with evidence to support its claims is not enough.").

## B. Summary judgment in favor of Dr. Yim was improper in the circumstances of this case

█ Applying these principles to the instant case, Dr. Yim did not satisfy his initial burden of production when he filed his motion for summary judgment since he did not demonstrate that Ralston could not meet his burden of proof at trial. Dr. Yim had the option of either putting forth affirmative evidence, or showing that Ralston could not carry his burden of proof at trial. See *id.* at 470–72, 99 P.3d at 1054–56; *Exotics Hawaii–Kona,* 116 Hawai'i at 302, 305–06, 172 P.3d at 1046, 1049–50. Dr. Yim neither provided affirmative evidence to support his position that he did not breach the standard of care, nor did he point to anything to indicate that Ralston would not have been able to offer proof at trial of a breach of the standard of care.

The only evidence Dr. Yim relied upon in support of his motion for summary judgment was two responses to interrogatories from Ralston in which Ralston stated that he would provide expert reports upon their availability. Ralston did not state in his responses that he could not name any experts or produce any expert testimony at trial to show that Dr. Yim breached the standard of care. *Cf. Exotics Hawaii–Kona,* 116 Hawai'i at 283, 305–06, 172 P.3d at 1027,

1049–50 (holding that the plaintiffs' expert reports were insufficient to prove damages at trial and noting that the date for supplementing those expert reports had passed). Moreover, at the time that Ralston responded to Dr. Yim's two sets of interrogatories (seven months and ten months after Ralston filed his complaint, respectively), Ralston was not yet required to name his witnesses.[16] See *French,* 105 Hawai'i at 472, 99 P.3d at 1056 ("[A] plaintiff need not initiate any discovery or reveal his witness or evidence unless required to do so under the discovery Rules or by court order.") (citation omitted). Thus, Dr. Yim's references in his motion for summary judgment to Ralston's interrogatory responses did not satisfy Dr. Yim's initial burden of production. See *id.* at 471–72, 99 P.3d at 1055–56.

Furthermore, Dr. Yim does not contend that Ralston ultimately would have been unable to offer proof at trial that Dr. Yim did not meet the appropriate standard of care. Dr. Yim only contends that Ralston failed to provide proof in the record. As this court acknowledged in *French,* "[t]he distinction between not placing proof in the record and not being able to offer proof at trial is crucial." *Id.* at 472, 99 P.3d at 1056 (citation omitted).

In addition, and as the ICA stated below, the instant case is distinguishable from *Exotics Hawaii–Kona* because that case involved a situation where the discovery deadline had already passed when the court granted the motion for summary judgment. 116 Hawai'i at 283, 286–87, 172 P.3d at 1027, 1030–31. Thus, there was no time left for the parties to gather further expert opinions. *Id.* In the instant case, there was still over a year left before the parties were required to submit all discovery and to name their final witnesses.[17] See *supra* note 16. Therefore,

---

16. The expert exchange deadline was left blank in the Trial Setting Status Conference Order. The discovery deadline was set for July 27, 2010, and pursuant to RCCH Rule 12(r), the deadline for naming witnesses was not until May 2010. Thus, when Ralston responded to Dr. Yim's interrogatories on December 8, 2008 and April 13, 2009, Ralston's time to gather further evidence in support of his claim had not elapsed.

17. Although Ralston's counsel agreed at the May 13, 2009 hearing to an accelerated deadline to provide his expert's report and to respond to the motion for summary judgment, there is nothing in the record to indicate that Ralston agreed to an accelerated deadline to name all of the witnesses that he would rely on at trial or to an accelerated deadline to conclude discovery. The failure of Ralston's counsel to provide an admissible expert opinion by the agreed-upon date

*Exotics Hawaii–Kona* is a case where the non-moving party was unable to "offer proof at trial" as opposed to merely failing to place "proof in the record[.]" *French*, 105 Hawai'i at 472, 99 P.3d at 1056 (citation omitted).

Dr. Yim also argues that the ICA erred in distinguishing *Eddins*. There, Darston Eddins filed a medical malpractice suit against Dr. J. Steven Morrison. *Eddins*, 105 Hawai'i at 376, 98 P.3d at 247. Dr. Morrison filed a motion for summary judgment and attached to his motion the affidavits of two doctors who stated that Dr. Morrison's treatment met the applicable standard of care. *Id.* at 377, 98 P.3d at 248. Eddins filed an opposition to Dr. Morrison's motion for summary judgment and attached the opinions of two other doctors who stated that Dr. Morrison's treatment did not meet the standard of care. *Id.* Eddins's doctors' opinions were "not contained in affidavits or otherwise made under oath or penalty of perjury." *Id.* These opinions were "xerox copies of the opinions [Eddins] mailed or faxed to Dr. Morrison's original attorney ... that were used in [a] court-annexed arbitration[.]" *Id.* at 377–78, 98 P.3d at 248–49. The circuit court determined that the opinions attached to Eddins' opposition were inadmissible hearsay because the testimony was not presented by affidavit. *Id.* at 378, 98 P.3d at 249. On appeal, the ICA determined that Eddins did not seek an HRCP Rule 56(f) continuance in order to obtain affidavits for his doctors' opinions, and that after Dr. Morrison submitted his doctors' affidavits "it was necessary" for Eddins to present affidavits in support of his position. *Id.* In addition, the ICA noted that after the circuit court struck Eddins' doctors' opinions and granted the motion for summary judgment, it gave Eddins a "second chance," i.e., the option of filing a motion "to try to remedy the situation[.]" *Id.* at 379, 98 P.3d at 250. As the ICA noted, however, Eddins took no action in response. *Id.* Accordingly, the ICA affirmed the circuit court's grant of summary judgment in favor of Dr. Morrison. *Id.*

*Eddins* is distinguishable from the instant case. Unlike *Eddins*, where the movant Dr. Morrison submitted expert reports to satisfy his initial burden of production, here, Dr. Yim merely pointed to Ralston's lack of evidence on his claim and Ralston's responses to Dr. Yim's interrogatories. The ICA's holding that Eddins, as the non-moving party, failed to properly rebut the evidence presented by Dr. Morrison to create a genuine issue of material fact, differs from the situation presented in this case where the issue is whether the movant, Dr. Yim, satisfied *his* initial burden of production. Had Dr. Yim provided a proper expert affidavit in support of his motion, Ralston would have been required to submit his expert's affidavit or request a HRCP Rule 56(f) continuance to allow more time to produce an admissible affidavit. *Cf. Eddins*, 105 Hawai'i at 377–79, 98 P.3d at 248–50. However, Dr. Yim did not do so.

Accordingly, Dr. Yim failed to satisfy his initial burden of production, and the ICA did not err in vacating the circuit court's judgment granting summary judgment in favor of Dr. Yim.

**C. HRCP Rule 56(f) is the proper procedure to request and obtain additional time to respond to a motion for summary judgment that is filed prior to the discovery deadline**

The ICA, citing *Celotex*, appeared to suggest that summary judgment may be appropriate prior to a discovery deadline if the non-movant has had *"adequate time* to conduct discovery and to identify experts." *Id.* at 51 n. 11, 282 P.3d at 593 n. 11 (emphasis added). The ICA also concluded that, in the instant case, Ralston did not have "adequate time" to conduct discovery. *Id.* Dr. Yim asserts that the ICA's determination that Ralston did not have adequate time to conduct discovery "subverts the procedure for a [HRCP] Rule 56(f) continuance" because Ralston failed to authenticate his expert's report within the agreed-upon deadline and failed to

---

does not indicate that Ralston could not meet his burden of proof at trial. Inasmuch as Dr. Yim failed to provide affirmative evidence that he satisfied the standard of care and failed to demonstrate that Ralston could not offer proof *at trial*, Dr. Yim did not satisfy his initial burden of production.

request a continuance to authenticate the report. Dr. Yim also contends that the "ICA's ruling creates a confusing and impractical rule for the circuit court[s] to try to implement." In addition, Dr. Yim argues that the ICA's opinion "encourages and protects inaction and non-disclosure of expert opinion by plaintiffs in malpractice action[s.]"

■ Under the circumstances of this case, we need not reach this issue because Dr. Yim failed to meet his initial burden of production. Nevertheless, we take this opportunity to clarify that the ICA erred in suggesting that the question of whether Ralston had "adequate time" to conduct discovery was relevant to its review of the summary judgment motion. First, such an approach would be inconsistent with the principles set forth by this court in *French* because it implies that a movant could obtain summary judgment simply by pointing to the non-movant's lack of evidence, so long as "adequate time" for discovery has passed. However, *French* requires that "the movant must first demonstrate that the non-moving party cannot carry its burden of proof at trial." 105 Hawai'i at 472, 99 P.3d at 1056. There is nothing in *French* that suggests that summary judgment is appropriate simply because there has been "adequate time" for discovery. To the contrary, the clear import of *French* is that summary judgment should not be granted when there is still time for the non-movant to develop evidence for use at trial, unless there is a basis for concluding (as was the case in *Celotex*) that such an effort would be futile.

Second, the procedures set forth in HRCP Rule 56(f) provide non-moving parties with protection against a premature grant of a motion for summary judgment. HRCP Rule 56(f) provides:

> **When Affidavits are Unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment *or may order a continuance to permit affidavits to be obtained or depositions to be taken or dis-*

*covery to be had or may make such other order as is just.*
(Emphasis added).

In *Crutchfield v. Hart*, 2 Haw.App. 250, 252, 630 P.2d 124, 125 (1981) (citation omitted), the ICA stated that the "safeguard against an improvident or premature grant of summary judgment" is a HRCP Rule 56(f) continuance. Moreover, it is generally recognized that,

> The purpose of subdivision (f) is to provide an additional safeguard against an improvident or premature grant of summary judgment and the rule generally has been applied to achieve that objective. Consistent with this purpose, courts have stated that technical rulings have no place under the subdivision and that it should be applied with a spirit of liberality.

10B Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure Civil 3d* § 2740, at 402 (1998) (footnotes omitted).

■ The ICA's suggestion that a court considering a motion for summary judgment should determine whether the non-movant had "adequate time" to conduct discovery undercuts the role of HRCP Rule 56(f) as the "safeguard against an improvident or premature grant of summary judgment[.]" *Crutchfield*, 2 Haw.App. at 252, 630 P.2d at 125 (citation omitted). Put another way, HRCP Rule 56(f) is the appropriate means by which parties can ensure that they have adequate time to respond to a motion for summary judgment.

Accordingly, the ICA erred in suggesting that the adequacy of the time Ralston had to conduct discovery was relevant to its determination of whether summary judgment was appropriate.

## IV. Conclusion

In sum, the circuit court erred in granting summary judgment because Dr. Yim did not meet his initial burden of production. Accordingly, the judgment of the ICA is affirmed.