**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0000388
29-MAY-2015
08:41 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---


EDWIN GARCIA, Plaintiff-Appellant,
v.
BERNARD ROBINSON, M.D., Defendant-Appellee,
and
JOHN DOES 1-5, JANE DOES 1-5, DOE CORPORATIONS 1-5,
DOE LLCS 1-5, DOE PARTNERSHIPS 1-5,
DOE NON-PROFIT ORGANIZATIONS 1-5,
and DOE GOVERNMENTAL AGENCIES 1-5, Defendants


NO. CAAP-13-0000388


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 10-1-2338)


MAY 29, 2015


FOLEY, PRESIDING J., LEONARD AND GINOZA, JJ.


OPINION OF THE COURT BY FOLEY, J.

Plaintiff-Appellant Edwin Garcia (**Garcia**) appeals from the Judgment, entered January 2, 2013 in the Circuit Court of the First Circuit[1] (**circuit court**).

On appeal, Garcia contends the circuit court erred in granting the motion for summary judgment of Defendant-Appellee Bernard Robinson, M.D. (**Robinson**) because (1) expert testimony was not required to establish a medical tort claim for lack of

---

[1] The Honorable Gary W.B. Chang presided.

informed consent and (2) if expert testimony was required, Robinson provided it in his own testimony.

## I. BACKGROUND

On June 14, 2007, Garcia was injured at work and, as a result, suffered from lower back pain due to a degenerative lumbar disk and spine disease at L4-5-S1. The injury is characterized in lay terms as "[p]inched nerves in the lower back causing leg pains." On February 28, 2008, Garcia signed a "Consent to Operation Postoperative Care, Medical Treatment, Anesthesia and/or Procedure" form (**Consent Form**), giving consent to Robinson to perform a "L4-5 micro/laminectomy and foramintomy with a discectomy if needed after intraoperative examination of the disk." The pre-printed text of the Consent Form stated that "I have been informed that there are many significant risks, such as severe loss of blood, infection, cardiac arrest and other consequences that can lead to death or permanent or partial disability, which can result from any procedure." In a space that stated "[a]ny additional comments may be inserted here[,]" Robinson handwrote that "[r]isks include allergy, hemorrhage, infection, technical problems, paralysis, and death." Garcia signed the Consent Form under a "FULL DISCLOSURE" statement that read

> I AGREE THAT MY PHYSICIAN HAS INFORMED ME OF THE:
>
> a) DIAGNOSIS OR PROBABLE DIAGNOSIS.
>
> b) NATURE OF THE TREATMENT OR PROCEDURES RECOMMENDED.
>
> c) RISKS OR COMPLICATIONS INVOLVED IN SUCH TREATMENT OR PROCEDURES.
>
> d) ALTERNATIVE FORMS OF TREATMENT, INCLUDING NON-TREATMENT, AVAILABLE.
>
> e) ANTICIPATED RESULTS OF TREATMENT.

On March 4, 2008, Robinson operated on Garcia's back. As a result of the surgery, Garcia alleges that he has "increased low back pain, uncontrolled shaking of the left leg, and numbness in left foot and leg." Garcia also alleges that he suffers emotionally, is depressed, and has trouble sleeping.

On November 1, 2010, Garcia filed a Complaint, pro se, against Robinson in the circuit court. The Complaint alleged

2

that, before his surgery, Robinson told him that "the type of surgery had a ninety percent (90%) success rate, and [Garcia] would be 'dancing in a couple of days' after surgery." Garcia alleged that Robinson failed "to exercise the degree of care or skill or possess the degree of knowledge ordinarily exercised or possessed by others of the profession in the State of Hawaii [Hawai'i]" and that Robinson "failed to properly inform [Garcia] of the risks involved with the surgery and misrepresented the lack of risk involved with the surgery." On May 18, 2011, Robinson filed an answer to Garcia's complaint.

On March 16, 2012, Robinson filed a motion for summary judgment (**MSJ**). In his Memorandum in Support of his MSJ, Robinson argued that he was entitled to judgment as a matter of law because "[Garcia had] no medical expert testimony to support his claims of medical negligence based upon the doctrine of informed consent."

On July 10, 2012, Gracia filed his Memorandum in Opposition to Robinson's MSJ. Garcia argued that the patient-oriented standard was the applicable standard for his failure to obtain informed consent claim. Garcia requested that "the motion for summary judgment be continued to allow this memorandum to be supplemented by the deposition testimony of [Robinson] and with additional declarations if necessary, depending upon the testimony of [Robinson]."

On July 13, 2012, Robinson filed an additional Motion for Partial Summary Judgment on Garcia's informed consent claim (**Partial MSJ**), arguing that Garcia's informed consent claim was not raised before the Medical Claims Conciliation Panel (**MCCP**) and, thus, the circuit court did not have jurisdiction over the claim. On August 31, 2012, Gracia filed an Memorandum in Opposition to Robinson's Partial MSJ and claimed that "the issue of lack of informed consent was part of the MCCP claim[.]" Garcia again alleged that Robinson had told him "there was a 90% success rate for the type of back surgery to be performed[,]" "[Garcia] would be 'dancing in a couple of days after surgery[,]'" and that "[Garcia] would have no pain after the surgery[.]" Garcia argued that he relied "upon [those]

representations, which were not true, in deciding to have the surgery." In support of his Memorandum in Opposition to the Partial MSJ, Garcia attached a copy of his Consent Form, portions of Robinson's deposition, a copy of Garcia's admission history and physical prepared by Robinson on February 28, 2008, and a letter from Lawrence M. Shuer, M.D. stating that it was his belief that Robinson's care did not fall below the standard of care.

On September 11, 2012, the circuit court held a hearing on the MSJ and Partial MSJ. During the hearing, the circuit court orally ruled that "expert testimony is not required to establish the duty with respect to informed consent[,]" but that expert testimony is required to support the question of materiality, namely "information regarding what a reasonable person objectively needs to hear from the physician to allow the patient to make an informed and intelligent decision regarding the proposed medical treatment." The circuit court noted that

> what our appellate courts have done is to formulate an [sic] paradigm for expert testimony on questions of materiality, and there are four elements of this paradigm that plaintiff is required to have medical testimony, and these four elements are: Number one, the nature of the risks inherent in a particular treatment; number two, the probabilities of therapeutic success; number three[,] the frequency of the occurrence of particular risks; and, number four, the nature of available alternatives to treatment.

The circuit court ruled that although Robinson's testimony could be relied upon to satisfy the elements of materiality, Robinson's testimony did not address all four of the elements and, thus, summary judgment in favor of Robinson was appropriate.

On October 10, 2012, the circuit court filed its "Order Granting Defendant Bernard Robinson, M.D.'s Motion for Summary Judgment, Filed 03/16/12" and its "Order Denying Defendant Bernard Robinson, M.D.'s Motion for Partial Summary Judgment On Plaintiff's Informed Consent Claim, Filed 07/13/12." The circuit court entered Judgment in favor of Robinson on January 2, 2013.

On October 22, 2012, Garcia moved for reconsideration of the circuit court's ruling, and the circuit court denied Garcia's motion on March 8, 2013.

On April 5, 2013, Garcia timely filed a notice of appeal of the circuit court's Judgment.

## II.   STANDARD OF REVIEW

The appellate court reviews "the circuit court's grant or denial of summary judgment de novo." Querubin v. Thronas, 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005).

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

Id. at 56, 109 P.3d at 697 (brackets omitted) (quoting Durette v. Aloha Plastic Recycling, Inc., 105 Hawai'i 490, 501, 100 P.3d 60, 71 (2004)).

The Hawai'i Supreme Court has set forth the following burden-shifting paradigm for situations where the non-movant bears the burden of proof at trial:

> The burden is on the party moving for summary judgment (moving party) to show the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitles the moving party to judgment as a matter of law. This burden has two components.
>
> First, the moving party has the burden of producing support for its claim that: (1) no genuine issue of material fact exists with respect to the essential elements of the claim or defense which the motion seeks to establish or which the motion questions; and (2) based on the undisputed facts, it is entitled to summary judgment as a matter of law. Only when the moving party satisfies its initial burden of production does the burden shift to the nonmoving party to respond to the motion for summary judgment and demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial.
>
> Second, the moving party bears the ultimate burden of persuasion. This burden always remains with the moving party and requires the moving party to convince the court that no genuine issue of material fact exists and that the moving party is entitled to summary judgment as a matter of law.

Ralston v. Yim, 129 Hawai'i 46, 56-57, 292 P.3d 1276, 1286-87 (2013) (quoting French v. Hawaii Pizza Hut, Inc., 105 Hawai'i 462, 470, 99 P.3d 1046, 1054 (2004)).

> In sum, this court's case law indicates that a summary judgment movant may satisfy his or her initial burden of production by either (1) presenting evidence negating an

> element of the non-movant's claim, or (2) demonstrating that the non-movant will be unable to carry his or her burden of proof at trial. Where the movant attempts to meet his or her burden through the latter means, he or she must show not only that the non-movant has not placed proof in the record, but also that the movant will be unable to offer proof at trial. Accordingly, in general, a summary judgment movant cannot merely point to the non-moving party's lack of evidence to support its initial burden of production if discovery has not concluded.

Ralston, 129 Hawai'i at 60-61, 292 P.3d at 1290-91 (emphasis and internal citations omitted).

## III. DISCUSSION

A. Expert Testimony to Establish Materiality

Garcia argues that the circuit court erred in granting Robinson's MSJ because expert testimony was not required to establish a medical tort claim for lack of informed consent. Garcia claims the requirement that expert testimony establish the materiality of a risk is not a rule, but rather dicta that this court need not follow.

Generally, "[p]hysicians have an obligation to obtain the informed consent of their patients before administering diagnostic and treatment procedures." Barcai v. Betwee, 98 Hawai'i 470, 483, 50 P.3d 946, 959 (2002). Hawaii Revised Statutes (**HRS**) § 671-3(b) (Supp. 2014) provides what information a physician must share with a patient in order to receive the patient's informed consent to the prescribed procedure. HRS § 671-3(b) provides:

> **§671-3 Informed consent.**
>
> . . . .
>
> (b) The following information shall be supplied to the patient or the patient's guardian or legal surrogate prior to obtaining consent to a proposed medical or surgical treatment or a diagnostic or therapeutic procedure:
>
> (1) The condition to be treated;
>
> (2) A description of the proposed treatment or procedure;
>
> (3) The intended and anticipated results of the proposed treatment or procedure;
>
> (4) The recognized alternative treatments or procedures, including the option of not providing these treatments or procedures;
>
> (5) The recognized material risks of serious complications or mortality associated with:

> (A) The proposed treatment or procedure;
>
> (B) The recognized alternative treatments or procedures; and
>
> (C) Not undergoing any treatment or procedure; and
>
> (6) The recognized benefits of the recognized alternative treatments or procedures.

Under Hawai'i law, the plaintiff patient must demonstrate the following to establish a claim of negligent failure to obtain informed consent:

> (1) the physician owed a duty to disclose the risk of one or more of the collateral injuries that the patient suffered; (2) the physician breached that duty; (3) the patient suffered injury; (4) the physician's breach of duty was a cause of the patient's injury in that (a) the physician's treatment was a substantial factor in bringing about the patient's injury and (b) a reasonable person in the plaintiff patient's position would not have consented to the treatment that led to the injuries had the plaintiff patient been properly informed; and (5) no other cause is a superseding cause of the patient's injury.

Barcai, 98 Hawai'i at 483-84, 50 P.3d at 959-60. Failure to obtain informed consent before rendering professional medical services constitutes a medical tort. HRS § 671-1 (2014 Repl.).

"Claims for negligent failure to obtain informed consent typically arise when a plaintiff patient alleges that the defendant physician failed to warn the patient of a particular risk associated with the procedure and the particular risk ultimately occurred." Barcai, 98 Hawai'i at 483, 50 P.3d at 959. The "patient oriented standard" is the applicable standard used to determine whether a physician owes a duty to disclose a particular piece of information to the patient. Id. at 484, 50 P.3d at 960 (noting that the "patient oriented standard" does not require a patient to produce expert medical testimony as to a physician's duty to disclose); see Bernard v. Char, 79 Hawai'i 371, 381-82, 903 P.2d 676, 686-87 (App. 1995) (**Bernard I**) aff'd, Bernard v. Char, 79 Hawai'i 362, 903 P.2d 667 (1995) (**Bernard II**). "The patient oriented standard requires a physician to disclose 'what a reasonable patient needs to hear from his or her physician in order to make an informed and intelligent decision regarding treatment . . . .'" Barcai, 98 Hawai'i at 484, 50 P.3d

7

at 960 (quoting <u>Carr v. Strode</u>, 79 Hawai'i 475, 484, 904 P.2d 489, 498 (1995)).

Hawai'i courts have emphasized that, in informed consent cases, expert testimony is necessary to establish the materiality of alleged risks associated with treatment. <u>Barcai</u>, 98 Hawai'i at 484, 50 P.3d at 960 (citation and internal quotation marks omitted); <u>See</u> <u>Ray v. Kapiolani Med. Specialists</u>, 125 Hawai'i 253, 268, 259 P.3d 569, 584 (2011); <u>Bernard I</u>, 79 Hawai'i at 383, 903 P.2d 676, 688, <u>aff'd</u> <u>Bernard II</u>, 79 Hawai'i 362, 903 P.2d 667; <u>Carr</u>, 79 Hawai'i at 486, 904 P.2d at 500. <u>See also</u> HRS § 671-3(b).

In <u>Barcai</u>, the Hawai'i Supreme Court reasoned that expert testimony was needed because lay jurors do not normally possess the necessary information to determine the materiality of a risk. <u>Barcai</u>, 98 Hawai'i at 484, 50 P.3d at 960. An expert must establish information pertaining to the materiality so that the jury can decide whether a reasonable person would have wanted to consider the purportedly withheld information before consenting to the treatment. <u>Id.</u>

Lower courts are bound to the standard as articulated in <u>Bernard I</u>, <u>Carr</u>, <u>Barcai</u>, and <u>Ray</u>. <u>See</u> <u>Robinson v. Ariyoshi</u>, 65 Haw. 641, 654, 658 P.2d 287, 298 (1982). The Hawai'i Supreme Court has held that

> a statement of a superior court [is] binding on inferior tribunals, even though technically dictum, where it "was passed upon by the court with as great care and deliberation as if it had been necessary to decide it, was closely connected with the question upon which the case was decided, and the opinion was expressed with a view to settling a question that would in all probability have to be decided before the litigation was ended."

<u>Id.</u> at 655, 658 P.2d at 298.

In <u>Bernard I</u>, the Intermediate Court of Appeals (**ICA**) concluded that the patient-oriented standard applies to determine whether a physician satisfied his duty of disclosure regarding a course of treatment. <u>Bernard I</u>, 79 Hawai'i at 383, 903 P.2d at 688. In so holding, the ICA intentionally clarified that "[its] conclusion today should not be construed to mean that expert testimony may be dispensed with entirely in informed consent cases." <u>Id.</u> Instead, the ICA stressed that "[e]xpert testimony

will still be 'required to establish the nature of risks inherent in a particular treatment, the probabilities of therapeutic success, the frequency of the occurrence of particular risks, [and] the nature of available alternatives to treatment[.]'" Id. (citing Sard v. Hardy, 379 A.2d 1014, 1024 (Md. Ct. App 1977)).

In Carr, the Hawai'i Supreme Court adopted the patient-oriented standard articulated in Bernard I and, like the ICA in Bernard I, "strongly caution[ed]" that its adoption of the patient-oriented standard for a physician's duty to disclose did not in any way obviate the need for an expert to testify to the materiality of the alleged risk asserted. Carr, 79 Hawai'i at 486, 904 P.2d at 500. The supreme court maintained:

> We strongly caution, however, as did the ICA in Bernard [I], that our adoption of the patient-oriented standard does not relieve plaintiffs of their burden to provide expert medical testimony as to the "materiality" of the risk; to the contrary, a plaintiff maintains the burden of adducing expert medical testimony to establish "the nature of risks inherent in a particular treatment, the probabilities of therapeutic success, the frequency of the occurrence of particular risks, and the nature of available alternatives to treatment." Bernard [I], 79 Hawai'i at 383, 903 P.2d at 688 (quotation marks, internal brackets, and citation omitted). As the Canterbury [v. Spence, 464 F.2d 772 (1972)] court noted:
>
>> Experts are ordinarily indispensable to identify and elucidate for the factfinder the risks of therapy and the consequences of leaving existing maladies untreated. They are normally needed on issues as to the cause of any injury or disability suffered by the patient and, where privileges are asserted, as to the existence of any emergency claimed and the nature and seriousness of any impact upon the patient from risk-disclosure. Save for relative[ly] infrequent instances where questions of this type are resolvable wholly within the realm of ordinary human knowledge and experience, the need for the expert is clear.
>
> [Canterbury,] 464 F.2d at 791-92 (footnote omitted).

Carr, 79 Hawai'i at 486, 904 P.2d at 500.

In Ray, the Hawai'i Supreme Court relied upon the expert testimony requirement for materiality determinations to support its holding that alternative dosages of the same medication can constitute "recognized alternative treatments," under HRS § 671-3(b)(4). Ray, 125 Hawai'i at 268, 259 P.3d at 584. The defendants in Ray argued that such a recognition would "dramatically expand the physician's liability (because a patient could always claim, in hindsight, that the physician should have

9

disclosed the option of receiving a lower dose)[.]" Id. The supreme court opined that the defendants' concerns were "overstated" Id. In support of its ruling, the supreme court reiterated that it has held in the past that "expert testimony will ordinarily be required to establish the 'materiality' of the risks, i.e., 'the nature of risks inherent in a particular treatment, the probabilities of therapeutic success, the frequency of the occurrence of particular risks, and the nature of available alternatives to treatment.'" Id. (quoting Barcai, 98 Hawai'i at 484, 50 P.3d at 960). Based on that understanding, the supreme court ultimately maintained that "healthcare providers will not be overwhelmed by [its] holding because the plaintiff will need to show that the medical community recognizes the different dosage as an alternative treatment." Ray, 125 Hawai'i at 268, 259 P.3d at 584.

The statement requiring expert testimony to establish the materiality of a risk has consistently been "passed upon by the court with as great care and deliberation as if it had been necessary to decide it, was closely connected with the question upon which the case was decided, and the opinion was expressed with a view to settling a question that would in all probability have to be decided before the litigation was ended." See Ariyoshi, 65 Haw. at 655, 658 P.2d at 298 (citation and internal quotation marks omitted). The circuit court did not err in holding that Garcia's informed consent claim required expert testimony to establish the materiality of the risk asserted.

B. Robinson's Expert Testimony

Robinson's MSJ alleged that he was entitled to judgment as a matter of law because "[Garcia had] no medical expert testimony to support his claims of medical negligence based upon the doctrine of informed consent." Garcia contends that summary judgment was improper because, "[a]ssuming that expert testimony was required to establish a prima facie claim for lack of informed consent in this case, that testimony was provided by

10

[Robinson] himself."[2] Garcia alleges that Robinson failed to inform him that the procedure may not be beneficial. Garcia contends that Robinson's deposition testimony established the materiality of that risk because "[Robinson] admitted that he should have advised [Garcia] of the possibility that the surgery might not be beneficial[.]"

As noted supra, expert testimony is needed to prove the materiality of an alleged risk, which includes "the nature of risks inherent in a particular treatment, the probability of therapeutic success, the frequency of the occurrence of particular risks, and the nature of available alternatives to treatment." Ray, 125 Hawai'i at 268, 259 P.3d at 584 (citation and internal quotation marks omitted). See HRS § 671-3(b). Instead of providing his own expert witness to testify to the materiality of the risk asserted, Garcia relied solely upon the deposition testimony of Robinson. See Barcai, 98 Hawai'i at 484, 50 P.3d at 960 (noting that "The plaintiff . . . need not necessarily provide such expert testimony; the requisite foundation can be established by the defendant's expert testimony."). During his deposition, Robinson testified that he did not include "failure of surgery to be beneficial" as a listed risk on the Consent Form because there was not enough space on the form, but noted that he discussed the possibility with Garcia before the surgery. Robinson testified that he discusses that possibility with "every single patient that [he] operate[s] on[,]" but did not testify to the materiality of the risk.

During the September 11, 2012 hearing, Garcia's counsel, Charles Brower, conceded that he did not have expert testimony to support at least two of the four elements of materiality:

> THE COURT: . . . .
>
> Mr. Brower, why don't we go through the elements one at a time, and you tell me what is the expert testimony that is contained in the record.

---

    [2] Ralston, which was not raised in the circuit court or on appeal by Garcia, is distinguishable in that Garcia was not precluded from offering expert testimony. It was Garcia's position that he was not required to do so, not that he was precluded by the granting of summary judgment.

. . . .

THE COURT: Number three, the frequency of the occurrence of particular risk.

MR. BROWER: Well, <u>he didn't testify as to the frequency</u>, but he testified that based upon his experience, but he testified that based upon his experience, that that [sic] is something that you need to disclose to Mr. Garcia, that there's a possibility of a failure of the surgery. He didn't give an exact number, but in his opinion, that's something that needed to be disclosed to Mr. Garcia. And their expert, too, put it there in his report. It is just a letter, but — I mean, I don't have his declaration, but again he confirmed that one of the risks of surgery is that it would not be beneficial and in fact the pain could get worse.

THE COURT: Number four, the nature of available alternatives to treatment.

MR. BROWER: Well, <u>that's another thing that the doctor did not disclose to Mr. Garcia in this particular case</u>, which is required by the statute. Mr. Garcia said the only thing he told him was, hey, there's a 90 percent chance of success here and he'd be up and dancing in three days.

(Emphases added.) Based on the record before us, Garcia failed to provide expert testimony to prove the materiality of the risk asserted. Therefore, the circuit court did not err in concluding that Robinson was entitled to judgment as a matter of law. <u>See</u> <u>Ralston</u>, 129 Hawai'i at 60-61, 292 P.3d at 1290-91.

## IV. CONCLUSION

Therefore, the Judgment, entered January 2, 2013 in the Circuit Court of the First Circuit is affirmed.

On the briefs:

Michael P. Healy
and
Charles H. Brower
for Plaintiff-Appellant.

Thomas E. Cook
Edquon Lee
(Lyons Brandt Cook &
Hiramatsu)
for Defendant-Appellee.

12