NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-21-0000413**
**06-NOV-2024**
**07:56 AM**
**Dkt. 98 SO**

NO. CAAP-21-0000413

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

LADONNA MICHELLE OWENS, PERSONAL REPRESENTATIVE
OF THE ESTATE OF OLIVER C. OWENS, Plaintiff-Appellant,
v.
THE QUEEN'S MEDICAL CENTER, LEON K. LIEM, M.D.;
LEON K. LIEM, M.D., LLC; DANIEL J. DONOVAN, M.D.;
DANIEL J. DONOVAN, M.D., LLC, Defendants-Appellees,
and
JOHN OR JANE DOES 1-20; DOE PARTNERSHIPS,
CORPORATIONS OR OTHER ENTITIES 1-20, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CC161000570)

### SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, McCullen and Guidry, JJ.)

In this medical malpractice action, Plaintiff-

Appellant Oliver C. Owens (**Owens**)[1] appeals from the "Order

Granting 'Defendant[-Appellee] The Queen's Medical Center

---

[1] Owens passed away during the pendency of this appeal. This court has approved the substitution of LaDonna Michelle Owens, as Personal Representative of the Estate of Oliver C. Owens, pursuant to Hawaiʻi Rules of Appellate Procedure Rule 43(a).

[(**QMC**)]'s Motion for Partial Summary Judgment as to Plaintiff's Claim for Negligence Regarding His Spinal Condition' Filed on 8/26/19" (**MSJ Order**), filed on March 19, 2020, and the "[Hawaiʻi Rules of Civil Procedure] HRCP Rule 54(b) Final Judgment" (**Judgment**), filed on June 25, 2021, by the Circuit Court of the First Circuit (**circuit court**).[2]  The MSJ Order and Judgment were entered in favor of QMC.[3]

Owens raises a single point of error on appeal, contending that "the trial court reversibly erred when it granted summary judgment in favor of [QMC] and entered its [MSJ Order], in which the court rejected [Owens'] expert opinions regarding causation, and found that [QMC] was entitled to judgment as a matter of law."[4]

Upon careful review of the record and relevant legal authorities, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Owens' contentions as follows:

---

[2]     The Honorable Gary W.B. Chang presided over the entry of all relevant substantive orders, including the MSJ Order, and the Judgment.

[3]     Although Owens' complaint also named Leon K. Liem, M.D., Leon K. Liem, M.D., LLC, Daniel J. Donovan, M.D., and Daniel J. Donovan, M.D., LLC, as defendants, they were dismissed as parties prior to entry of the MSJ Order and Judgment, and are nominal appellees to this appeal.

[4]     Owens' complaint set forth two counts: Count I, alleging negligence; and Count II, alleging no informed consent.  QMC moved for summary judgment as to both Counts I and II.  Owens filed a statement of no opposition with regard to Count II.  The circuit court issued orders granting summary judgment in favor of QMC on Count II in February 2020, and on Count I in March 2020.  Owens does not appeal the summary judgment as to Count II.

(1) Owens contends that the circuit court erred by ruling that Dr. Weinstein's proffered testimony was inadmissible pursuant to Hawaii Rules of Evidence (**HRE**) Rules 702 and 703.[5] The admission of expert testimony, pursuant to HRE Rules 702 and 703, "is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his [or her] discipline." State v. Vliet, 95 Hawaiʻi 94, 106, 19 P.3d 42, 54 (2001) (citation omitted). "[A] trial court may disallow expert testimony if it concludes that the proffer of specialized knowledge is based on a mode of analysis that lacks trustworthiness." State v. Maelega, 80 Hawaiʻi 172, 182, 907 P.2d 758, 768 (1995) (cleaned up).

---

[5] HRE Rule 702 provides,

> **Rule 702 Testimony by experts.** If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise. In determining the issue of assistance to the trier of fact, the court may consider the trustworthiness and validity of the scientific technique or mode of analysis employed by the proffered expert.

HRE Rule 703 provides,

> **Rule 703 Bases of opinion testimony by experts.** The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. The court may, however, disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness.

The "touchstones of admissibility" under HRE Rule 702 are relevance and reliability.  Vliet, 95 Hawaiʻi at 106, 19 P.3d at 54 (citation omitted).  As this court has previously explained,

> Whether a witness qualifies as an expert is a matter addressed to the sound discretion of the trial court, and such determination will not be overturned unless there is a clear abuse of discretion.  In applying HRE Rule 702, the trial court must determine whether the expert's testimony is (1) relevant, and (2) reliable.  The trial court's relevancy decision under HRE [Rule] 702 is reviewed *de novo*.  The trial court's determination as to reliability is reviewed under the abuse of discretion standard.

Barbee v. Queen's Med. Ctr., 119 Hawaiʻi 136, 152, 194 P.3d 1098, 1114 (App. 2008) (cleaned up).  "[I]n a medical malpractice case, a plaintiff must establish proximate or contributory causation through the introduction of expert medical testimony" and such testimony "must be based on a 'reasonable medical probability.'"  Id. at 159, 194 P.3d at 1121.

We conclude that the circuit court abused its discretion in determining that Dr. Weinstein's proffered testimony on causation was not reliable, and in excluding the testimony on that basis.

The circuit court found that Owens proffered Dr. Weinstein's testimony to establish "legal causation" by opining: (1) "that [QMC] failed to meet its duty to insure [sic] that its nursing staff provide proper discharge instructions to a surgical patient"; (2) "[a]s a result," "[Owens] lacked an understanding regarding when he should return to the hospital or

4

otherwise contact Dr. Liem if problems arose after surgery"; and (3) "[a]n earlier call to Dr. Liem by [Owens] would likely have prevented the eventual occurrence and persistence of paralysis due to cervical spinal cord compression."  With regard to *causation*, Dr. Weinstein's testimony was therefore introduced to establish that the provision of improper discharge instructions caused Owens' paralysis.

We conclude that the circuit court erred in finding "that Dr. Weinstein's opinion on the discharge instructions causing harm to [Owens] is not admissible because it is [a] self-serving attempt to modify his prior deposition testimony, lacks foundation, and constitutes pure conjecture or speculation."

The record reflects that Owens provided an adequate foundation for Dr. Weinstein's testimony on causation, by establishing that Dr. Weinstein's education, training, and experience as a licensed and board-certified neurologist whose experience in performing the same type of surgical procedure performed on Owens by Dr. Liem, as well as his familiarity with the type of discharge instructions that should be provided to patients after that specific procedure, qualified him as an expert regarding the causal nexus between inadequate discharge instructions and Owens' paralysis.  Dr. Weinstein represented in his deposition testimony that, *inter alia*, had proper discharge

instructions been provided to Owens, Owens would have likely obtained a "better neurological result,"

> Q.  What's the basis for your conclusion that had Dr. Donovan been notified earlier, he would have done anything differently than what he did or when he did it?
>
> A.  The basis is the course of events after he was notified, which is that he first tried adjusting pain medication, he then admitted Dr. Donovan (sic) for a course of intravenous steroid therapy, and he then took him back for another operation as an emergency.
>
> I think that if he had been –- if he had understood more about Mr. Donovan (sic), his patient –- Mr. Donovan (sic) as his patient, his surgical risk factors, the extent of the surgery that had been performed, each of those events would have been moved up by a day.
>
> . . . .
>
> Q.  So how can you say that he would have done it earlier than that day?
>
> A.  My opinion is based on my supposition that if he had seen the patient two days earlier, he would have started the steroids and, after 24 hours with the amount of deterioration that had occurred up to the 22nd, I guess, he would have taken him to surgery earlier with a better neurological result.

Owens later clarified, through the submission of Dr. Weinstein's own deposition testimony, that Dr. Weinstein's use of "speculative" language – through words such as "supposition" and "guess" – reflected his opinion of causation within reasonable medical probability,

> Well, I understand "speculative" to be an [sic] hypothesis.  In other words, almost every medical principle that we use is best approximation.  So there's always some uncertainty.  And that's my interpretation of the term "speculative".
>
> . . . .
>
> . . . I was interpreting that lack of speculation as a hundred percent.  Anything less than that, say it was an 80- or 90-percent chance, as having an element of being speculative.

Owens' clarification of Dr. Weinstein's inability to opine with one hundred percent certainty that inadequate discharge instructions caused Owens' paralysis cannot fairly be construed as a "self-serving attempt to modify [Dr. Weinstein's] prior deposition testimony." This clarification, moreover, establishes why Dr. Weinstein's testimony as to causation does not constitute "pure conjecture or speculation," but, rather, explains why his opinion is consistent with the medical standard of "best approximation."

The record does not support the circuit court's characterization of Dr. Weinstein as "an interloper who stands behind academic credentials with no real expertise on the subject matter." Nor does it support that "Dr. Weinstein's opinion as to causation is untrustworthy and does not appear to be based upon any scientific technique or analysis," and that Dr. Weinstein is therefore "merely a mouthpiece in support of the plaintiff by offering an 'expert' opinion as a matter of convenience and opportunity." The circuit court abused its discretion in making these unsupported findings, and in excluding Dr. Weinstein's expert testimony on the issue of causation.

(2) Owens contends that the circuit court erred in granting summary judgment on Count I because a genuine question of material fact exists as to causation.  We agree.

"On appeal, the grant or denial of summary judgment is reviewed de novo."  Ralston v. Yim, 129 Hawaiʻi 46, 55, 292 P.3d 1276, 1285 (2013) (citations omitted).  The court applies the following standard,

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.  The evidence must be viewed in the light most favorable to the non-moving party.  In other words, we must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion.

Id. at 55-56, 292 P.3d at 1285-86.

Owens' proof of the causation element of his negligence claim was contingent on medical expert testimony. Bernard v. Char, 79 Hawaiʻi 371, 377, 903 P.2d 676, 682 (App. 1995), aff'd, 79 Hawaiʻi 362, 903 P.2d 667 (1995) ("unlike the ordinary negligence case, it is the general rule that a medical malpractice case based on negligent treatment cannot be established without expert medical testimony to support it"). As explained *supra*, the circuit court erred in excluding Dr. Weinstein's proffered testimony on causation.  Dr. Weinstein's

8

expert testimony raises a genuine question of material fact as to causation.

For the foregoing reasons, we vacate the MSJ Order, and Judgment, and remand for further proceedings consistent with this summary disposition order.

DATED: Honolulu, Hawaiʻi, November 6, 2024.

On the briefs:

Richard Naiwieha Wurdeman,
for Plaintiff-Appellant.

Saori Takahashi,
for Defendant-Appellee.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Sonja M.P. McCullen
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge